UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DENYALL BALL,

                                        Plaintiff,

v.                                                              5:24-cv-0438
                                                                (GTS/TWD)


CRIMINAL INVESTIGATIONS DEPARTMENT, et al,

                                        Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

DENYALL BALL
*Plaintiff, pro se*
423 S. Hamilton St.
Watertown, NY 13601

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

## I.      INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Denyall Ball ("Plaintiff"), as well as a motion to proceed *in forma pauperis* ("IFP").  Dkt. No. 1;

Dkt. No. 2.  For the reasons stated below, the Court recommends Plaintiff's complaint be

dismissed.

## II.     IFP APPLICATION

        Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore,

she is granted permission to proceed IFP.

### III.    COMPLAINT

Plaintiff's complaint, which utilized the Court's form complaint for civil rights actions, lists the "criminal investigations department" and "Watertown Police department" as defendants. Dkt. No. 1 at 2.[1]  Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 for violations of "Civil Rights, Human Rights, Constitutional Rights[.]"  *Id*. at 3.  Plaintiff contends "[a]s a victim of remote neural monitoring, my rights are being violated."  *Id*. at 4.

In support of her claims, Plaintiff sets forth the following facts, which have occurred on an ongoing basis in Watertown:

> The first time I remember my mind being sent a photograph or video image was in 2018.  Then in 2020 during a neurology scan They sent some sort of imaging into my brain.  They do this often.  The scan was done in March of 2020.  They have been Periodically Seizing my brain using the technology outlined in the Assembly Bill A 8195.  They have brainwashed me.  They work on individual Parts of by brain working on a "program."  They refer to it as the "System."  It may have caused severe damage to my body and brain as I am not the same.

*Id*.  Plaintiff further avers, as a result of the alleged events,

> I have sustained severe injuries in the past.  Their technology Had almost crippled me.  They are trying to make it seem as if I have multiple personality disorder.  The A.I. has programmed different things in my mind that are absolutely awful.  They have made changes in my emotions, my physiology, my body.  They have tried to hypnotize me.  They have done this thing where they seem to broadcast my "voice print" to devices and people.  They have sexually abused me so badly, they have physically abused me, mentally.  They seem to have taken things from my home.  They have a program that can change my handwriting slightly.  They have harassed me, every morning my brain seems to be different as they filled the parts with lies and terrible images.  They treaten to dump

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

> it into my consciousness and then they threaten I will be killed or
> worse.  I want off the "system."

*Id*. at 5.  With respect to relief, Plaintiff states:

> I am seeking money damages.  In the amount of 150,000.00 for the
> extreme brutal force, almost lethal force, extreme sexual abuse,
> cruel and unusual punishment, physical abuse, mental abuse and
> suffering the extreme interrogation techniques the confusion, loss of
> use of my brain, the invasive Brain wave patterns, the sent
> videofeeds, texts and disgusting false accusations they constantly
> have done the way they have ruined my life, sending a
> psycotropic medication in a brutal way against my will, all the
> breakins and items they have taken from my home in the past in
> hopes to frame me as what seems to be some kind of terrible
> criminal, emotional damages as well I also want the court to help me
> get off their "system."

*Id*.  The complaint is dated March 15, 2024.  *Id*. at 6.

Plaintiff subsequently filed an addendum to the complaint on April 11, 2024.  *See* Dkt.

No. 4.[2]  She seeks to "include federal officials as well.  I believe there may be federal agents who

are involved with violating my rights."  *Id*. at 1.  Plaintiff adds officials violated her rights under

"The NYS Artificial Intelligence Bill of Rights.  These include A8129, S8209, A8195, A8110

laws Affected by these Bills are Add Art IV §§ 401-409, St Tech L, Amd St Tech L, generally;

and § 2.10, CPL Add § 60.80, CPL; add § 4551, CPLR."  *Id*.  Plaintiff further alleges:

> Since filing the lawsuit they have extensively brainwashed me.
> They have caused damage to my brain, cognitive function, nervous
> system and have started to give me "disabilities."  Creating pain in
> my body.  They use A.I. to manipulate me in every way.  Claiming
> they are trying to "frame" me.  They have been putting things in my
> mind that never existed before, they have implemented "programs"
> that hypnotize me they isolate the left top of my brain and fill it with
> very odd phrases.  They entirely prevented my brain from
> responding normally.  A corrections officer by the name of Janelle
> T. told me about this.  She knew this was happening to me.  A police
> Officer by the name of Officer Macintyre also knows about this as

---

[2] Piecemeal complaints are not permitted.  Because of Plaintiff's *pro se* status, the Court will
review the complaint and "addendum" together for sufficiency pursuant to 28 USC Section 1915.

well.  They are continuing to threaten me and hurt me.  So I would like to add to the monetary amount I am seeking for damages.  I would like to add 850,000 to the damages totaling an amount of 1,000,000.  The amount of pain and suffering I have gone through has been awful and I feel like human life is priceless.

*Id*. at 1-2.

Plaintiff also submitted a civil cover sheet.  *See* Dkt. No. 6.  Plaintiff did not list any defendants, but listed "Jefferson" as the defendant's county of residence.  *Id*. at 1.  Plaintiff described the cause of action as "violation of due process of law, violation of state and federal A.I. Bill of Rights, Excessive force, Illegal Search and Seizures" pursuant to the following authorities: "federal A.I. Bill of Rights, Executive order 13960, NYS Bill 1042A, A8195, A8129, A8110."  *Id*.

## IV.  STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);

4

*see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437.

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not

required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.   ANALYSIS

First, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."  *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.") (citations omitted); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *9 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case.").[3] Because the Watertown Police Department and the Criminal Investigations Division or Department thereof cannot be sued, Plaintiff's complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See, e.g.*, *La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's

---

[3] A municipality itself may be named as a defendant in certain circumstances.  *See generally*, *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694; *see also*, *e.g.*, *LeTray v. City of Watertown*, No. 5:20-CV-1194 (FJS/TWD), 2024 WL 1107903, at *8 (N.D.N.Y. Feb. 22, 2024) ("a municipality is liable under § 1983 if its policy causes a constitutional injury.") (citation omitted).  Here, however, nothing in Plaintiff's complaint suggests action taken pursuant to a municipal policy, custom, or practice, therefore, a claim of municipal liability under *Monell* would not be appropriate.

6

Complaint is dismissed as against the Town of Bethlehem Police Department."); *Hester v. City of Oneida*, No. 6:23-CV-1171 (AMN/TWD), 2023 WL 7543607, at *4 (N.D.N.Y. Nov. 14, 2023), *report and recommendation adopted*, 2024 WL 78485 (N.D.N.Y. Jan. 8, 2024).

In any event, Plaintiff's allegations against the named Defendants and the unnamed "federal officials" referenced in her addendum, *see* Dkt. No. 4 at 1, are wholly frivolous.[4] "An action is 'frivolous' when . . . the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy . . . ." *Livingston*, 141 F.3d at 437 (citing *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990)) (additional quotations and citations omitted). Here, Plaintiff's claims of having been "brainwashed" and "manipulated" by "a program" called "the 'system'" are completely unrealistic. *See Mahmood v. U.S. Dep't of Homeland Sec.*, No. 1:21-CV-0782 (MAD/DJS), 2021 WL 3129255, at *2-3 (N.D.N.Y. July 23, 2021) (recommending the plaintiff's complaint, which alleged the "Defendant has been targeting him with radiation and electric currents, and has been brainwashing him and using mind control techniques on him" be dismissed with prejudice), *report and recommendation adopted*, 2021 WL 5048451 (N.D.N.Y. Nov. 1, 2021); *Brodzki v. Shannon*, No. 5:11-CV-1117 (GTS/ATB), 2011 WL 7109553, at *3 (N.D.N.Y. Sept. 23, 2011) (recommending dismissal of plaintiff's complaint in its entirety, noting the "factual allegations involving torture and mind control . . . are completely fanciful, and appear to border on the delusional"), *report and recommendation adopted*, 2012 WL 254090 (N.D.N.Y. Jan. 27, 2012); *Sun Jung v. Bloomberg*, No. 1:10-CV-

---

[4] *See also Mahmood v. United States Gov't*, No. 1:20-CV-0207 (MAD/DJS), 2020 WL 3965125, at *2-3 (N.D.N.Y. Mar. 17, 2020) (recommending dismissal with prejudice of the plaintiff's complaint which alleged "a pattern of unethical, unlawful, and inhumane Electronic Surveillance, Mind-Control, and Cyber-Stalking activities" by unnamed officials of the United States Government" noting "Plaintiff's claims against the United States Government are subject to dismissal on the grounds of sovereign immunity.") (internal quotations omitted), *report and recommendation adopted*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020).

0118, 2010 WL 276641, at *1 (E.D.N.Y. Jan. 19, 2010) (dismissing as factually frivolous the plaintiff's complaint which alleged he was "a target of electronic harassment, mind control, directed energy weapons, organized stalking, electronic torture and human experimentation"). Therefore, dismissal of Plaintiff's complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) is also warranted. *Livingston*, 141 F.3d at 437.

Finally, while the court should generally afford a *pro se* plaintiff an opportunity to amend her pleading following its *sua sponte* dismissal, leave to re-plead may be denied where amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the deficiencies with Plaintiff's complaint would not be cured by amended the pleading. Accordingly, the Court recommends the complaint be dismissed with prejudice. *See*, *e.g.*, *Eldin v. Barber*, No. 6:15-CV-0440 (MAD/ATB), 2015 WL 1780638, at *6-7 (N.D.N.Y. Apr. 20, 2015) (recommending dismissal of the plaintiff's "rambling and disjointed" complaint regarding his "concern[] that he is the victim of microwaves and psychotronic weapons" with prejudice, as plaintiff's contentions were "clearly baseless" such that no attempt to amend could cure the problems with the complaint) (citing *Neitzke*, 490 U.S. at 327), *report and recommendation adopted*, 2015 WL 2453485 (N.D.N.Y. May 22, 2015); *Hester*, 2023 WL 7543607, at *4 (recommending dismissal of the complaint as to police entities with prejudice).

VI.   **CONCLUSION**

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[5] and it is

---

[5] Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees incurred in the future regarding this action, including, but not limited to, copying and/or witness fees.

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  May 6, 2024
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

***MEMORANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

**B. Defendants' Motion**
**\*2** On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 5:24-cv-00438-GTS-TWD   Document 7   Filed 05/06/24   Page 11 of 76
2012 WL 4052286

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

> [1]  It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]    See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]    See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties),

(3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. See N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*"[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ."[5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

[4] *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at \*5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

[5] *Powell,* 2005 WL 3244193, at \*5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6] *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at \*12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...."[7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[8]

[7] *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8] *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted].[10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[11] As the Supreme Court has explained,

[9] *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10] *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11     *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

12     *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8**  After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13]    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department, [15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]   In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10** For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina, 525 U.S. at 241.* Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]   More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]   More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order

to amend her complaint at all on four occasions.[21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile.[22]

18      *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

19      *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

20      *Id.*

21      *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

22      *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

23      *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24]     *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25]     *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]     *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is *GRANTED* **in part** and *DENIED* **in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally *DISMISSED;* and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document**                                  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was

interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d

680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

**b. Analysis**

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]     Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**i. Town of Bethlehem Police Department**

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at *5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at *5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the

department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

**ii. Defendants Kraz and Helligrass**

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at *22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases).

"[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

### B. Plaintiff's Motion for Summary Judgment

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has not received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment

is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

### C. Amended Complaint

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4).[4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]     Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

Case 5:24-cv-00438-GTS-TWD   Document 7   Filed 05/06/24   Page 27 of 76

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7543607
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald HESTER, Plaintiff,

v.

CITY OF ONEIDA et al., Defendants.

6:23-cv-01171-AMN-TWD
|
Signed November 14, 2023

**Attorneys and Law Firms**

RONALD HESTER, Plaintiff, pro se, 2723 Emerson Lane, Kissimmee, FL 34743.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

 **\*1**  The Clerk has sent the Court a civil rights complaint filed by Ronald Hester ("Plaintiff") for initial review pursuant to 28 U.S.C. § 1915. (Dkt. No. 1.) Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

### II. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. (Dkt. No. 2.) After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status. Therefore, Plaintiff's IFP application is granted.

### III. STANDARD OF REVIEW

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The Court shall dismiss a complaint in a civil action if the Court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989),

abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

 **\*2**  Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### IV. BACKGROUND

#### A. The Arrest, Search, and Questioning of Plaintiff

On the morning of January 5, 2023, Det. Salle [1] of the Rome Police Department was conducting surveillance in the "500 block" of North Madison Street in Oneida County in relation to a recent "shots fired" investigation. (Dkt. No. 1 at 5; Dkt. No. 1-1 at 2.) During the surveillance of the residence located at 506 North Madison Street, Det. Salle observed two black males and one white female exit the residence and enter a red Honda sedan. (Dkt. No. 1 at 5; Dkt. No. 1-1 at 2.) Det. Salle contacted other members of the Rome Police Department and relayed that the sedan had an expired Florida registration; the owner of the sedan, Plaintiff, had a suspended New York Driver's License; and Jessica Reed was driving the vehicle. (Dkt. No. 1 at 5.) Officers Page and Zonnevylle conducted a traffic stop of the sedan due to its expired registration in the "400 block" of North George Street. *Id.* Ms. Reed told the officers she had a suspended license. *Id.* at 5, 7. The officers took Ms. Reed into custody and placed her in the back of the patrol vehicle. *Id.* at 7.

[1]     Although Det. Salle's last name is spelled "Salley" in the caption of the complaint, the Court uses the spelling provided in the attached state court opinion. (Dkt. No. 1-1 at 1-13.) The Clerk is directed to correct the spelling to Salle on the docket.

Per his bodycam footage, Officer Page spoke with the two black males who were still in the vehicle. *Id.* Plaintiff was sitting in the front passenger seat and identified himself to Officer Page. *Id.* Upon being told the vehicle was being towed, Plaintiff and the other man exited the vehicle. *Id.* Because they were not detained, they left the scene shortly after exiting the vehicle. *Id.*

According to Officer Page, he began an inventory search of the vehicle pursuant to Rome Police Department policy prior to the arrival of the tow truck. *Id.* However, Officer Page "did not complete the inventory record of the entire contents of the vehicle." (Dkt. No. 1 at 7; Dkt. No. 1-1 at 3.) As Officer Page "searched for 'something big,' " he came across a handgun in the spare tire compartment of the vehicle. (Dkt. No. 1-1 at 3.) Per his bodycam footage, Officer Page told Officer Zonnevylle he ceased the inventory search upon finding the gun. *Id.* Officer Zonnevylle later testified he completed the inventory search record of the vehicle the next day. *Id.*

After securing the gun, the police located Plaintiff and took him into custody. *Id.* at 4. While at the Rome Police Station, Det. Salle read Plaintiff his *Miranda* warnings. *Id.* Plaintiff

stated he understood his rights and agreed to speak with the detective. *Id.*

Det. Salle interviewed Plaintiff twice. *Id.* At the first interview, Plaintiff denied any knowledge of the recovered gun. *Id.* Plaintiff then underwent a visual body cavity search. *Id.*

Plaintiff was directed to remove his clothes and then squat and cough in the presence of Officer White. *Id.* Officer White observed a "foreign object" under Plaintiff's scrotum and directed him to remove the item and place it on the floor. *Id.* The item was suspected to be cocaine. *Id.*

**\*3** Det. Salle later testified the search was conducted "based solely on [Plaintiff's] history for a drug offense and no other reason." *Id.* On the police department's "Unclothed Search Form," Det. Salle indicated "the sole reason the unclothed search was performed was based upon the fact that [Plaintiff's] criminal history showed him having an undated 'CSCS 3 [rd]' offense." *Id.*

After the visual body cavity search, Det. Salle interviewed Plaintiff again and Plaintiff discussed the recovered gun. *Id.*

### B. Suppression of Certain Evidence

Plaintiff was indicted for Criminal Possession of a Controlled Substance in the Third Degree; Criminal Possession of a Weapon in the Second Degree; and Criminal Possession of a Firearm. *Id.* at 1. Plaintiff moved to suppress certain oral statements he made to law enforcement personnel "involuntarily" and certain evidence that was allegedly seized in violation of his constitutional rights. *Id.*

Hon. Robert L. Bauer of Oneida County Court found the inventory search of Plaintiff's car was not legal as it was equivalent to an "impermissible 'general rummaging' to discover incriminating evidence" and accordingly suppressed the recovered gun from evidence. *Id.* at 9 (citation omitted).

Judge Bauer further found previous drug offenses from nine years ago, standing alone "with no further 'specific, articulable, factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity' [were] not enough to justify the distinctly elevated level of intrusion' " of the visual body cavity search and accordingly suppressed the cocaine recovered from Plaintiff's person. *Id.* at 10 (citation omitted).

Additionally, Judge Bauer found the statements Plaintiff made to the officers at the scene prior to his arrest were voluntarily made, were not subject to *Miranda*, were not in violation of Plaintiff's constitutional rights, and would be admissible at trial. *Id.* at 11.

However, Judge Bauer held "those statements [Plaintiff] made after having duly waived his [*Miranda*] rights resulted from the aforementioned illegal searches and are accordingly suppressed as fruit of the poisonous tree." *Id.* at 12 (citations omitted). Judge Bauer noted

> the testimony and evidence admitted at the hearing, the police actions in stopping the Honda and impounding same as no valid driver was on scene, to searching its contents and finding the gun, then subsequently directing that defendant be taken into custody, Mirandized and interviewed regarding the recovered gun, then strip searched whereupon drugs were recovered, which led to defendant's second interview, constituted one continuous chain of events.

*Id.*

Further, there was nothing in the record "to show the taint of the illegal search of the vehicle had become attenuated so that the gun would have been independently discovered or that for any other reason the gun was not come by exploitation of that illegality." *Id.* (internal quotation marks and citations omitted). Judge Bauer applied the same reasoning to the "illegal, invasive search" of Plaintiff's person which yielded cocaine. *Id.* at 13.

### C. The Current Action

Plaintiff commenced this action on September 12, 2023, against the City of Oneida, the Rome Police, the Oneida County Police, the Oneida County Sheriff's Department, Det. Salle, Officer Zonnevylle, Officer Page, and Officer White alleging violations of his Fourth Amendment rights, false arrest, false imprisonment, and an illegal cavity search of his person. (Dkt. No. 1 at 6.) He seeks $5,000,000 in damages

and "the [s]uspension and/or [t]ermination of all officers involved." *Id.*

### V. DISCUSSION

 **\*4** Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (internal quotations and citations omitted). To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself." *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 361 (W.D.N.Y. 2021) (internal quotations and citation omitted). A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

### A. City of Oneida

To begin, Plaintiff's claims against the City of Oneida must be dismissed. A municipality can be liable under § 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The doctrine of respondeat superior cannot be used to establish municipal liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Cash v. County of Erie*, 654 F.3d 324, 333-34 (2d Cir. 2011); *Dzugas–Smith v. Southhold Union Free School Dist.*, No. 08 CV 1319, 2012 WL 1655540, at \*20 (E.D.N.Y. May 9, 2012). Here, Plaintiff does not allege, and nothing in his complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to a municipal policy or custom. Thus, Plaintiff has not made a showing, in his pleadings, sufficient to impose *Monell* liability on the City of Oneida. *See Hayward v. City of New York*, No. 12-CV-3220 ENV, 2012 WL 3580286, at \*1

(E.D.N.Y. Aug. 17, 2012). Therefore, the Court recommends dismissing the complaint against the City of Oneida without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B. Oneida County Police, Oneida County Sheriff's Department, and Rome Police

Plaintiff lists Oneida County Police, Oneida County Sheriff's Department, and Rome Police as defendants in the caption of his complaint. A "police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cty. of Nassau*, No. 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see, e.g., La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing the complaint against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### C. Det. Salle, Officer Zonnevylle, Officer Page, and Officer White

**\*5** The Court liberally construes Plaintiff's general claim for Fourth Amendment violations to be equivalent to his claims for false arrest, false imprisonment, and an illegal cavity search of his person. (*See* Dkt. No. 1 at 5-9.) Based on the facts in the complaint, the Court construes the false arrest and false imprisonment claims to pertain to Det. Salle, Officer Zonnevylle, and Officer Page and the illegal cavity search claim to pertain to Det. Salle and Officer White. (Dkt. No. 1 at 5, 7-9; Dkt. No 1-1 at 1-13.)

### 1. False Arrest and False Imprisonment

"A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Cea v. Ulster Cty.*, 309 F. Supp. 2d 321, 329 (N.D.N.Y. 2004) (quoting *Sulkowska v. City of N.Y.*, 129 F. Supp. 2d 274, 287 (S.D.N.Y. 2001)). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

The elements of a claim for false arrest under § 1983 are the same elements as a claim for false arrest under New York law. *Lewis v. City of New York*, 18 F. Supp. 3d 229, 235 (E.D.N.Y. 2014) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

"For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (N.Y. 2016); *accord Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause is a complete defense to an action for false arrest.") (citation and internal quotation marks omitted). Probable cause exists where the officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citation and internal quotation marks omitted). "[T]he court looks only to the information the arresting officer had at the time of the arrest." *Peterson v. Cty of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Here, the Court construes Plaintiff's complaint to allege that because Judge Bauer ruled the search of Plaintiff's car to be illegal and consequently suppressed the recovered gun, that there was no probable cause to arrest and confine him. (*See* Dkt. No. 1-1 at 1-13.) However, "[f]or federal false arrest claims, even in circumstances where a preceding search is illegal, police officers may use evidence obtained in that illegal search to establish probable cause for an arrest." *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at *3 (S.D.N.Y. Mar. 27, 2018) (citing *Townes v. City of New York*, 176 F.3d 138, 144-49 (2d Cir. 1999)); *see also Serrano v. City of New York*, No. 16-CIV-8105(AKH), 2018 WL 3392869, at *6 (S.D.N.Y. July 12, 2018), *aff'd*, 793 F. App'x 29 (2d Cir. 2019) ("Under *Townes*, the fruit of the poisonous tree doctrine cannot be used to 'link the unreasonable search and seizure' to what came next—the discovery of the marijuana cigarette on plaintiff's person—which unquestionably gave officers probable cause to arrest plaintiff[.]").

 **\*6** In New York State, a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285 (EK) (ST), 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* (citing N.Y. Penal Law § 265.15(3)). "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* "Therefore, upon finding the loaded handgun in the car, the officers had probable cause" to arrest and confine Plaintiff, defeating his false arrest and false imprisonment claims. *Id.* As noted above, because the fruit of the poisonous tree doctrine does not apply to § 1983 claims, the gun recovered from the illegal search of Plaintiff's car created probable cause for officers to arrest and confine him. *Id.* at *5 (citing *Townes*, 176 F.3d at 145). Accordingly, Plaintiff's false arrest and false imprisonment claims necessarily fail.

Plaintiff's Fourth Amendment false arrest and false imprisonment claims are also frivolous because a dispositive defense (i.e., probable cause) appears on the face of the complaint. *Ferguson*, 130 F. Supp. 2d at 565; *Harrell*, 268 F.3d at 148-49; *Woods*, 921 F. Supp. at 1144-45; *see also Garcia*, 279 F. Supp. 2d at 298. The undersigned accordingly recommends the Court dismiss Plaintiff's Fourth Amendment false arrest and false imprisonment claims because they are frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

### 2. Body Cavity Search

The Fourth Amendment protects individuals against searches of their person without a warrant. *Johnson v. City of New York*, No. 21-CV-5268 (PKC), 2022 WL 4133284, at *3 (S.D.N.Y. Sept. 12, 2022). A search incident to an arrest, however, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. *Riley v. California*, 573 U.S. 373, 382 (2014). Nevertheless, there are limitations upon the scope of an appropriate search incident to an arrest. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). Indeed, whether a search incident to an arrest was lawful turns upon whether such search was reasonable. *Id.*

Visual body cavity searches in particular are "invasive and degrading" and a "serious invasion of privacy," even more intrusive than a typical strip search. *Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019). As such, "a visual body cavity search conducted as an incident to a lawful arrest for any offense must be supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity." *Sloley*, 945 F.3d at 38 (citation and quotation marks omitted). To determine whether a visual body cavity search was reasonable under the circumstances, "courts also consider whether the individual's preceding arrest was for a misdemeanor or felony, whether it involved drugs, whether the individual would soon be surrounded by other inmates or arrestees or housed alone, whether the search occurred privately, and whether the search was performed pursuant to reasonable suspicion or because of a blanket policy." *Monroe v. Gould*, 372 F. Supp. 3d 197, 204 (S.D.N.Y. Mar. 14, 2019) (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013)).

Based on relevant authority from New York State courts, *Sloley* identified various factors which can support a reasonable suspicion that an arrestee is secreting narcotics inside his person. *See* 945 F.3d at 46. For example, officers may have reasonable suspicion where the arrestee is seen placing his hands down his pants or making similarly suspicious movements. *People v. Hunter*, 902 N.Y.S.2d 678, 679-80 (3d Dep't 2010) (finding reasonable suspicion based

in part on the officers' observation of the arrestee "fidgeting with his hands down the back of his pants"); *People v. Harry*, 884 N.Y.S.2d 712, 712-13 (1st Dep't 2009) (finding reasonable suspicion where an arrestee was placed in a patrol car and observed "moving around a lot, like sliding up and down in his seat and making movements with his hands" as though he were attempting to place or remove something from his pants); *People v. Clayton*, 868 N.Y.S.2d 303, 305-06 (2d Dep't 2008) (finding reasonable suspicion where the arrestee was observed "wiggling around" in the patrol car and placing his hands in an area where the officer had felt a hard object during a pat-and-frisk). An officer may also have reasonable suspicion based on information that a particular arrestee is secreting objects in his person, or that he has a custom of doing so. *See Hunter*, 902 N.Y.S.2d at 680 (finding reasonable suspicion based in part on information the officers had received from a confidential informant that the arrestee "had a habit of carrying narcotics in his rectum"); *Clayton*, 868 N.Y.S.2d at 306 (finding reasonable suspicion based in part on the defendant's "history of secreting contraband in his rectum"). Finally, an officer has reasonable suspicion where he has watched a suspect "retriev[e] an item from his buttocks area and exchang[e] it for money from a person found in possession of drugs minutes later." *People v. Barnville*, 819 N.Y.S.2d 234, 236 (1st Dep't 2006).

**\*7**  None of these factors appear to be present here. *See Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at \*23–27 (S.D.N.Y. Mar. 26, 2021). Det. Salle testified "the visual body cavity search of [Plaintiff's] person was based solely on [his] history for a drug offense and no other reason." (Dkt. No. 1-1 at 4, 10.) Further, on the "Unclothed Search Form," Det. Salle indicated "the sole reason the unclothed search was performed was based upon the fact that [Plaintiff's] criminal history showed him having an undated 'CSCS 3 rd offense.' " *Id.* at 4, 10. Judge Bauer ultimately found

> [n]o other justification was offered for the search at issue. Prior drug offenses, the last nine years prior, standing alone, with no further 'specific, articulable, factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity' are not enough to justify the 'distinctly elevated level of intrusion' of this search.

*Id.* (citation omitted).

Given what is alleged, the Court recommends Plaintiff's Fourth Amendment claim based on the visual body cavity

search survives initial review under 28 U.S.C. § 1915(e) and requires a response. In so recommending, the undersigned expresses no opinion regarding whether the claim could survive a properly filed motion to dismiss or motion for summary judgment.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, [2] and it is

[2]
> Plaintiff should note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff's Fourth Amendment claim based on the body cavity search against Det. Salle and Officer White **SURVIVES** *sua sponte* review; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment false arrest and false imprisonment claims against Det. Salle, Officer Zonnevylle, and Officer Page be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[3]
> If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the

next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2023 WL 7543607

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 78485
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald HESTER, Plaintiff,

v.

CITY OF ONEIDA, et al., Defendants.

6:23-cv-01171 (AMN/TWD)
|
Signed January 8, 2024

**Attorneys and Law Firms**

RONALD HESTER, 2723 Emerson Lane, Kissimmee, FL 34743, Plaintiff, Pro Se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On September 12, 2023, Plaintiff *pro se* Ronald Hester commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City of Oneida, the Oneida County Police, the Oneida County Sheriff's Department, the Rome Police, Detective ("Det.") Salle, [1] Officer Zonnevylle, Officer Page, and Officer White alleging violations of his Fourth Amendment rights, false arrest, false imprisonment, and an illegal cavity search of his person. *See* Dkt. No. 1 (the "Complaint").

[1]    As noted in the Report-Recommendation, Det. Salle's last name is incorrectly spelled "Salley" in the caption of the Complaint. Dkt. No. 4 at 3 n.1. The Clerk of the Court is directed to correct the spelling of Detective Salle's name on the Docket.

Plaintiff sought leave to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who, on November 14, 2023, issued an Order and Report-Recommendation ("Report-Recommendation") granting Plaintiff's application to proceed IFP, and recommending that (i) the Court dismiss the Complaint against the City of Oneida without prejudice; (ii) the Court dismiss the Complaint against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police with prejudice; (iii) Plaintiff's Fourth

Amendment false arrest and false imprisonment claims against Det. Salle, Officer Zonnevylle, and Officer Page be dismissed with leave to amend; and (iv) Plaintiff's Fourth Amendment claim based on the body cavity search against Det. Salle and Officer White survives initial review and requires a response. *See generally* Dkt. No. 4. [2] Magistrate Judge Dancks advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 15. Plaintiff has not filed any objections to the Report-Recommendation and the time for filing objections has expired.

[2]    For a complete recitation of the facts in Plaintiff's Complaint, the parties are referred to the Report-Recommendation. *See* Dkt. No. 4 at 3-7.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

A district court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, the court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition).

"[I]n a *pro se* case ... the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**III. DISCUSSION**

**\*2** Because Plaintiff has not filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

As to the Defendants named in the Complaint, Magistrate Judge Dancks first concluded that the Complaint did not sufficiently allege *Monell* liability with respect to the City of Oneida because Plaintiff did not allege that "any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to a municipal policy or custom." Dkt. No. 4 at 7-8 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). As a result, Magistrate Judge Dancks recommended dismissing the Complaint against the City of Oneida without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.* at 8.

As to Defendants Oneida County Police, Oneida County Sheriff's Department, and Rome Police, Magistrate Judge Dancks concluded that they are not proper parties because a "police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Id.* at 8-9 (quoting *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999)). As a result, Magistrate Judge Dancks recommended dismissing the Complaint against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.*

Magistrate Judge Dancks next construed the facts in the Complaint as alleging false arrest and false imprisonment claims against Det. Salle, Officer Zonnevylle, and Officer Page, and as alleging an illegal cavity search claim against Det. Salle and Officer White. *Id.* at 9 (citing Dkt. No. 1 at 5, 7-9; Dkt. No. 1-1 at 1-13). [3] As to Plaintiff's false arrest and false imprisonment claims, Magistrate Judge Dancks determined that these claims fail because, upon finding a handgun in Plaintiff's car, there was probable cause for the officers to arrest and confine Plaintiff, regardless of whether the search of Plaintiff's vehicle was illegal. *Id.* at 9-12 (citing, *inter alia, Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (N.Y. 2016); *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at \*3 (S.D.N.Y. Mar. 27, 2018)). [4] Magistrate Judge Dancks noted that Plaintiff's false arrest and false imprisonment claims are "frivolous" because the existence of probable cause provides "a dispositive defense ... on the face of the complaint." *Id.* at 11-12. As a result, Magistrate Judge Dancks recommended dismissing Plaintiff's Fourth Amendment false arrest and false imprisonment

claims with leave to amend. *Id.* at 12 (citing 28 U.S.C. § 1915(e)(2)(B)(i)).

[3]      Magistrate Judge Dancks liberally construed Plaintiff's "general claim for Fourth Amendment violations," Dkt. No. 1 at 5-9, as "equivalent to his claims for false arrest, false imprisonment, and an illegal cavity search." Dkt. No. 4 at 9.

[4]      Magistrate Judge Dancks construed the Complaint "to allege that because [Oneida County Court] Judge Bauer ruled the search of Plaintiff's car to be illegal and consequently suppressed the recovered gun, that there was no probable cause to arrest and confine him." Dkt. No. 4 at 10 (citing Dkt. No. 1-1 at 1-13).

**\*3** Finally, as to Plaintiff's Section 1983 claim against Det. Salle and Officer White based on the body cavity search of Plaintiff's person, Magistrate Judge Dancks determined that none of the factors relied upon by the Second Circuit to establish the reasonable suspicion necessary to perform a body cavity search, *see Sloley v. VanBramer*, 945 F.3d 30, 46 (2d Cir. 2019), [5] appear to be present in this case. *Id.* at 13-14. [6] As a result, Magistrate Judge Dancks recommended that Plaintiff's Fourth Amendment claim based on the visual body cavity search survives initial review under 28 U.S.C. § 1915(e) and requires a response.

[5]      In *Sloley*, the Second Circuit found that police officers must have "reasonable suspicion" to conduct a lawful visual body cavity search, and identified factors that can support a reasonable suspicion that an arrestee is "secreting contraband on or in his" person. 945 F.3d at 38-39, 46.

[6]      Magistrate Judge Dancks also relied on Det. Salle's testimony and Det. Salle's "Unclothed Search Form" which indicated that the visual body cavity was performed on Plaintiff solely based on his history of prior drug offenses. Dkt. No. 4 at 14 (citing Dkt. No. 1-1 at 4, 10).

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

**IV. CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 4, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the Complaint is **DISMISSED without prejudice** against the City of Oneida; and the Court further

**ORDERS** that the Complaint is **DISMISSED with prejudice** against the Oneida County Police, the Oneida County Sheriff's Department, and the Rome Police; and the Court further

**ORDERS** that Plaintiff's Fourth Amendment false arrest and false imprisonment claims against Detective Salle, Officer Zonevylle, and Officer Page are **DISMISSED without prejudice and with leave to amend**; and the Court further

**ORDERS** that Plaintiff's Fourth Amendment claim based on the body cavity search against Detective Salle and Officer White **SURVIVES initial review** and requires a response; and the Court further

**ORDERS** that Plaintiff may file an Amended Complaint **within THIRTY (30) DAYS** of this Order; and the Court further

**ORDERS** that if Plaintiff files an Amended Complaint within the time permitted, the Amended Complaint is referred to

Magistrate Judge Dancks for further review; and the Court further

**ORDERS** that if Plaintiff does not file an Amended Complaint, the case is returned to Magistrate Judge Dancks for any orders relating to service of the Complaint on Defendants Detective Salle and Officer White; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules. [7]

> [7]   If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised that any Amended Complaint will entirely replace the original Complaint. If Plaintiff fails to file an Amended Complaint within thirty (30) days, he will be deemed to have forfeited the opportunity to replead the dismissed claims, and the case will proceed solely on Plaintiff's Fourth Amendment claim based on the body cavity search against Det. Salle and Officer White.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 78485

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Mahmood v. U.S. Department of Homeland Security, Not Reported in Fed. Supp. (2021)**

2021 WL 3129255

2021 WL 3129255
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

U.S. DEPARTMENT OF
HOMELAND SECURITY, Defendant.

1:21-CV-782 (MAD/DJS)
|
Signed 07/23/2021

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, Plaintiff, Pro Se,
Hyderabad, Telangana 500008, India.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** *Pro se* Plaintiff filed a Complaint in this action and
filed a request to proceed *in forma pauperis* on July 9, 2021.
Dkt. Nos. 1 & 2. By separate Order, this Court granted
Plaintiff's Application to Proceed IFP. Now, in accordance
with 28 U.S.C. § 1915(e), the Court will *sua sponte* review
the sufficiency of the Complaint.

### I. DISCUSSION

#### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed *in forma pauperis*,
"the court shall dismiss the case at any time if the court
determines that ... the action or appeal (i) is frivolous or
malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912

F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme
caution ... in ordering *sua sponte* dismissal of a *pro se*
complaint *before* the adverse party has been served and both
parties (but particularly the plaintiff) have had an opportunity
to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983) (emphasis in original) (citations omitted). Therefore, a
court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the
court should construe the factual allegations in the light most
favorable to the plaintiff, "the tenet that a court must accept
as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Id.* "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-
pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged
– but it has not 'show[n]'–'that the pleader is entitled to
relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A
pleading that only "tenders naked assertions devoid of further
factual enhancement" will not suffice. *Id.* at 678 (further
citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the
proposition that Federal Rule of Civil Procedure 8 "demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation"). Allegations that "are so vague as to fail
to give the defendants adequate notice of the claims against
them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.
Appx. 102, 104 (2d Cir. 2009).

#### B. Allegations Contained in Plaintiff's Complaint

**\*2** The substance of Plaintiff's present Complaint is very
similar to previous actions he has brought against the United
States Government, 1:20-CV-207 and 1:20-CV-409, which
have now been dismissed.

In the present Complaint, Plaintiff, who currently resides
in India, alleges that he lived in the United States from
2000 through 2016, working for various employers in various
locations. Dkt. No. 1, Compl., p. 2. He alleges that Defendant
has been targeting him with radiation and electric currents,
and has been brainwashing him and using mind control

Case 5:24-cv-00438-GTS-TWD   Document 7   Filed 05/06/24   Page 39 of 76

Mahmood v. U.S. Department of Homeland Security, Not Reported in Fed. Supp. (2021)

2021 WL 3129255

techniques on him. *Id.* at pp. 2-3. Among other things, Plaintiff alleges that he has been stalked, that his phone lines have been tapped, and that Defendant involved Plaintiff in money transfer scams and caused him to submit fraudulent applications to various U.S. government benefit programs. *Id.* at pp. 2-7. Plaintiff alleges that the stalking and torture caused him to become disabled and to quit his employment and return to India. *Id.* at p. 5. Plaintiff further alleges that Defendant has been collaborating with Indian authorities to prevent him from obtaining employment in India, and intentionally disapproved Plaintiff's immigration documents without giving any reason. *Id.* at pp. 3 & 6. Plaintiff alleges that the above has caused him to develop a number of health issues, to be demoted, to lose employment multiple times, and to lose immigration status. *Id.* at pp. 5-7.

### C. Analysis of Plaintiff's Claims

Plaintiff's claims cannot be maintained because the Department of Homeland Security is immune from suit as an agency of the United States based on the general principle that "the doctrine of sovereign immunity 'shields the Federal Government and its agencies from suit,' and divests the court of subject matter jurisdiction over claims brought against them." *Rishar v. U.S. Gov.*, 2015 WL 5642918, at *2 (D. Vt. Sept. 23, 2015) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)); *see also Williams v. Immigration and Naturalization*, 2020 WL 9264850, at *3 (N.D.N.Y. Sept. 25, 2020). "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). "Consent to suit 'must be unequivocally expressed in statutory text, and cannot simply be implied.' " *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. at 21 (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)). Plaintiff makes no contention that any waiver of this immunity applies to the allegations set forth in the Complaint.

While the Federal Tort Claims Act ("FTCA") provides a limited waiver of immunity from suit for tort claims, the Department of Homeland Security, as an agency of the United States, is not a proper party for an FTCA suit, the only proper party for which is the United States. *McCracken v. Brookhaven Science Assocs. LLC*, 376 Fed. Appx. 138, 140 (2d Cir. 2010) (summary order) ("[T]he federal defendants were properly dismissed for lack of subject matter jurisdiction, because the agencies were not subject to suit under the Federal Tort Claims Act"); *Page v. Oath Inc.*, 2018 WL 1406622, at *3 (S.D.N.Y. Mar. 20, 2018) ("A federal agency is not a proper defendant under the FTCA; only the United States can be sued for claims within the law's scope."). Even if the Complaint were against the proper party for an FTCA action, the Complaint fails to allege compliance with the FTCA's exhaustion requirements. *See Hill v. United States*, 2019 WL 5694016, at *5 (E.D.N.Y. Aug. 6, 2019); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) ("The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements."). "Accordingly, even if a pro se plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over the FTCA claim if [the] plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action." *Moore v. Samuel S. Stratton Veterans Admin. Hosp.*, 2019 WL 251725, at *3 (N.D.N.Y. Jan. 17, 2019) (internal quotations omitted).

**\*3** "Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Where, however, the grounds for dismissal offer no basis for curing the defects in the pleading, leave to amend would be futile. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are "substantive rather than formal and [ ] leave to amend would be futile." *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013). The defects outlined above cannot be cured with better pleading. As such, the Court recommends that Plaintiff's Complaint be dismissed with prejudice. [1]

---

[1]     Plaintiff's Motion Requesting Expedite[d] Hearing, Dkt. No. 5, which seeks an expedited hearing on

Case 5:24-cv-00438-GTS-TWD  Document 7  Filed 05/06/24  Page 40 of 76

Mahmood v. U.S. Department of Homeland Security, Not Reported in Fed. Supp. (2021)

2021 WL 3129255

his Complaint, is denied as moot, as review of his Complaint is now being undertaken.

## II. PLAINTIFF'S REMAINING REQUESTS

Plaintiff has also submitted a request to participate in electronic filing. Dkt. No. 3. At this time, because the Court is recommending that Plaintiff's Complaint be dismissed, Plaintiff's Motion is denied. *See Amato v. McGinty*, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

Finally, Plaintiff has submitted a Motion Requesting Emergency Funds, requesting that the Court arrange for or pay Plaintiff for Plaintiff's urgent family and medical expenses. Dkt. No. 4. In light of the Court's recommendation that this action be dismissed, and the Court's inability to provide Plaintiff the relief he seeks, this request is denied.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** with prejudice; and it is

**ORDERED**, that Plaintiff's Motion to Participate in Electronic Filing (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion Requesting Emergency Funds (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[2]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3129255

---

Case 5:24-cv-00438-GTS-TWD Document 7 Filed 05/06/24 Page 41 of 76

Mahmood v. United States Department of Homeland Security, Not Reported in Fed....

2021 WL 5048451

2021 WL 5048451
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, Defendant.

1:21-CV-782 (MAD/DJS)
|
Signed 11/01/2021

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500008, India, Plaintiff pro se.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff *pro se* Mohammed Sayeed Mahmood ("Plaintiff") commenced this action on July 9, 2021, against the United States Department of Homeland Security asserting the following claims: (1) intentional tort; (2) stalking; (3) electronic surveillance; (4) invasion of privacy; (5) pain and suffering; (6) hostile work environment; (7) defamation; (8) discrimination; (9) harassment; (10) demotion; (11) reduction of job responsibilities; (12) lost wages; (13) violation of employment rights; and (14) violation of immigration rights. *See* Dkt. No. 1. Plaintiff also submitted a motion to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2.

In a Report-Recommendation and Order dated July 23, 2021, Magistrate Judge Stewart conducted an initial review of the complaint and recommended that this action be dismissed with prejudice. *See* Dkt. No. 9. Specifically, Magistrate Judge Stewart found that Plaintiff's claims, which are brought against the United States Department of Homeland Security, are subject to dismissal on the grounds of sovereign immunity. *See id.* at 4-7. Neither party has objected to Magistrate Judge Stewart's Report-Recommendation and Order.

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous

or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff's complaint must be dismissed with prejudice. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). In this case, "Plaintiff makes no contention that any waiver of this immunity applies to the allegations set forth in the Complaint." Dkt. No. 9 at 5.

**\*2** Moreover, although the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity from suit for tort claims against the United States, the Department of Homeland Security, as an agency of the United States, is not a proper party for an FTCA suit. Rather, the only proper party in a suit brought under the FTCA is the United States. *McCracken v. Brookhaven Science Assocs.*

Case 5:24-cv-00438-GTS-TWD    Document 7    Filed 05/06/24    Page 42 of 76

Mahmood v. United States Department of Homeland Security, Not Reported in Fed....

2021 WL 5048451

*LLC,* 376 Fed. Appx. 138, 140 (2d Cir. 2010) ("[T]he federal defendants were properly dismissed for lack of subject matter jurisdiction, because the agencies were not subject to suit under the Federal Tort Claims Act"); *Page v. Oath Inc.,* No. 17 Civ. 6990, 2018 WL 1406622, *3 (S.D.N.Y. Mar. 20, 2018)* ("A federal agency is not a proper defendant under the FTCA; only the United States can be sued for claims within the law's scope") (citations omitted). Furthermore, the FTCA has strict exhaustion requirements, and the burden is on the plaintiff to both plead and prove compliance with those requirements. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir. 1987). Even if the complaint was against the proper party for an FTCA action, the complaint neither mentions the FTCA nor alleges compliance with its exhaustion requirements. *See Pope v. Geo Grp.,* No. 18-CV-6900, 2019 WL 79426, *3 (E.D.N.Y. Jan. 2, 2019)* ("Accordingly, even if a *pro se* 'plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over' the FTCA claim if [the] 'plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action'

") (quoting *Diaz v. MDC Detention Ctr.,* No. 17-CV-3728, 2018 WL 472810, *2 (E.D.N.Y. Jan. 17, 2018)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's July 23, 2021 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that this action is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5048451

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 7109553
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony BRODZKI, Plaintiff,

v.

District Attorney Joe SHANNON Jr., et al, Defendants.
Anthony Brodzki, Plaintiff,

v.

Walworth District Attorney, et al, Defendants.

Nos. 5:11–CV–1117 (GTS/ATB),
5:11–CV–1118 (MAD/ATB).
|
Sept. 23, 2011.

**Attorneys and Law Firms**

Anthony Brodzki, North Richland Hills, TX, pro se.

**ORDER AND REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent the above complaints to me for my review. On September 20, 2011, *pro se* plaintiff, Anthony Brodzki, filed what appear to be civil rights actions, pursuant to 42 U.S.C. § 1983, together with applications to proceed *in forma pauperis.* (Dkt.Nos.1, 2) (both actions).

**I.** *Complaint in 11–CV–1117*

Plaintiff brings the first action against District Attorney Joe Shannon Jr. and Tarrant County. [1] (Compl. p. 1). Plaintiff alleges that defendant Shannon allows the police in Tarrant County "to use electronic equipment on me to torture me" and "continual[ly] electronic [sic] shock me, and lets them run me out of Tarrant [C]ounty because they are trying to tell me something, or because I am mentally ill." (Compl. p. 1). Plaintiff requests $50,000,000.00 in damages and an injunction ordering defendant Shannon to "stop all police electronic harassment." (Compl. p. 1).

[1]     It appears that Tarrant County is in Texas, where plaintiff resides.

**II.** *Complaint in 11–CV–1118*

Plaintiff brings the second action against Walworth District Attorney and Clark County District Attorney. (Compl. p. 1).

Plaintiff alleges that on a recent visit to Walworth County, [2] the district attorney allowed "his" police officers to "run [plaintiff] right out of Walworth County." (Comp. p. 2). Plaintiff alleges that the officials in Walworth County are "part of a larger group of law people who for the last 4 years have harassed me, tortured me, and violated my civil rights." (Compl. p. 2).

[2]     It appears plaintiff's allegations relate to Walworth County, Wisconsin, as Phillip A. Koss is the District Attorney there, and plaintiff mentions Mr. Koss in the complaint, even though he is not a named defendant.

Plaintiff alleges that Dave Rogers, the "state['s] attorney Las Vegas," threw plaintiff out of his residence and allowed "the hook up and use of disorientation equipment," "kept [plaintiff] up all night," and "allowed heart recession equipment to be used as well." (Compl. p. 2). Plaintiff alleges that these actions "precluded" a move to New York. Plaintiff requests $5,000,000.00 in damages and an injunction to "stop all mind body harassment" against Walworth County, and $75,000,000.00 in damages and an injunction "ordering [the Clark County District Attorney] to stop all harassment, including mind and body, privacy and all other activities in relation to hurting [plaintiff] and violating [plaintiff's] civil rights." For the reasons stated below, this court recommends that each of plaintiff's complaints be dismissed in its entirety.

**III.** *In Forma Pauperis ("IFP") Review*

Plaintiff has filed an application to proceed IFP in each of the above-captioned cases. (Dkt. No. 2) (both actions). Pursuant to 28 U.S.C. § 1915(a)(1), the court may authorize the commencement, prosecution, or defense of any suit, action or proceeding without the pre-payment of fees. The individual seeking permission to proceed IFP must file an affidavit which includes a statement of all assets, showing that the individual is unable to pay the fees or give security therefor. *Id.* The same section, however, states that this determination is "subject to subsection (b)." *Id.* Subsection (b) provides that notwithstanding any filing fee or portion of the fee that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue, or the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary

relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**\*2** Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). To avoid dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke,* 490 U.S. at 325. A review of plaintiff's IFP applications reveals that plaintiff meets the financial requirements to proceed IFP. The Court will now turn to a consideration of the plaintiff's complaints under the above standards.

### IV. *Venue*

Venue in federal-question cases is determined by 28 U.S.C. § 1391(b), which provides that

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In this case, plaintiff is a citizen of Texas, and defendants are citizens of Texas, Wisconsin, or Nevada. Even assuming that plaintiff could sue the district attorneys and counties he names in these cases, it is clear that *neither of these cases have any*

*connection to this district,* and none of the parties resides in the Northern District of New York. Thus, regardless of the merits of either action, venue is improper in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district, shall dismiss" or, in the interests of justice, shall transfer the case to the district in which it could have been brought. 28 U.S.C. § 1406(a). The Second Circuit has cautioned that a court should not dismiss for improper venue on its own motion "except in *extraordinary circumstances." Stich v. Rehnquist,* 982 F.2d 88, 89 (2d Cir.1992) (emphasis added).

In *Stich,* the plaintiff brought his action in the Southern District of New York, including among other defendants, the Justices of the Supreme Court; a former United States Attorney General; and bankruptcy judges in the Ninth Circuit, where he had been classified as a vexatious litigant and had been barred from bringing suits without leave of court. *Id.* at 88. The Second Circuit in *Stich* quoted the District Court's finding that "neither the activities nor the parties alleged in this complaint have any relation to this district" because the plaintiff was domiciled in Nevada and resided in California, while all the defendants were residents of the District of Columbia. *Id.* at 89. Based on these facts, the Second Circuit determined that the "case presented appropriate circumstances for the court's exercise of its power to dismiss," *sua sponte,* based on improper venue." *Id.*

**\*3** These cases present precisely those extraordinary circumstances cited by the court in *Stich* that are required to justify *sua sponte* dismissal. *See Stich v. Rehnquist,* 982 F.2d at 89. Aside from the obvious lack of venue, plaintiff's factual allegations involving torture and mind control by the assorted District Attorneys in various states are completely fanciful, and appear to border on the delusional. In addition, plaintiff is the epitome of the abusive litigant. According to the National Case Party Index database, beginning 2009 to date, plaintiff has filed over one hundred civil actions, fourteen appeals, and one bankruptcy. Other courts have cited plaintiff's vexatious litigation, and he has been sanctioned or barred from filing in more than one federal district court. *See, e.g., Brodzki v. Weiss,* No. CV–11–32, 2011 U.S. Dist. LEXIS 18691, 2011 WL 772393 at \*2 (D.Mont. Feb. 25, 2011) ("Brodzki's allegations are fantastic, delusional, irrational, and frivolous."); *Brodzki v. Regional Justice Center,* No. 2:10–CV–1091, 2010 U.S. Dist. LEXIS 141865 at \*2 (D.Nev. July 22, 2010) ("Plaintiff's allegations are wholly within the realm of fantasy." [3] ); *In re*

*Brodzki,* No. 10 C 4591, 2010 U .S. Dist. LEXIS 141705 (N.D.Ill. July 23, 2010) (enjoining Brodzki from filing any new civil action without first obtaining leave from the court); *Brodzki v. North Richland Hills Police Dep't,* No. 3:10–CV–539, 2010 U.S. Dist. LEXIS 40068, 2010 WL 1685799 (N.D.Tex. March 31, 2010) (sanctioning plaintiff for abusing the litigation process). He has filed these cases all over the country and is now attempting to continue his abusive behavior in this district. [4] Accordingly, rather than ordering a transfer of these actions, the court will recommend dismissal of both of the above-captioned complaints.

[3]    The Nevada case appears to have similar allegations to this case: "Plaintiff alleges that the Defendant is responsible for a 'torture machine' which has 'electronically tortured' him using a 'neurophonic base' noise transmission. Plaintiff also alleges that this machine is part of a network that spans from Las Vegas to Chicago." *Brodzki v. Regional Justice Center,* No. 2:10–CV–1091, 2010 U.S. Dist. LEXIS 141865 at *2 (D.Nev. July 22, 2010).

[4]    The court notes that plaintiff previously filed another case in the Northern District of New York, naming the State of New York as a defendant, that was dismissed. *Brodzki v. The State of New York,* No. 11–CV–336 (TJM–RFT) (Order closing case dated May 11, 2011, Dkt. No. 9) (case closed after plaintiff filed a second amended complaint that was dismissed for failure to cure the pleading deficiencies contained in plaintiff's original complaint).

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motions to proceed IFP (Dkt. No. 2) (both actions) are **GRANTED ONLY FOR PURPOSES OF FILING THESE COMPLAINTS,** and it is further

**RECOMMENDED,** that the complaints be **DISMISSED** in their entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii); and it is further

**ORDERED,** that the Clerk file a copy of this Order and Report–Recommendation in both 5:11–CV–1117 and 5:11–CV–1118.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 72, 6(a), & 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 7109553

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 254090
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony BRODZKI, Plaintiff,
v.
Joe SHANNON, Jr., District Attorney of Tarrant
County, Texas; and Tarrant County, Defendants.
Anthony Brodzki, Plaintiff,
v.
Phil Koss, District Attorney of Walworth
County, Wisconsin; and Dave Rogers, District
Attorney of Clark County, Nevada, Defendants.

Nos. 5:11–CV–1117 (GTS/
ATB), 5:11–CV–1118 (GTS/ATB).
|
Jan. 27, 2012.

**Attorneys and Law Firms**

Anthony Brodzki, North Richland Hills, TX, pro se.

***DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in the two above-captioned civil rights actions filed by Anthony Brodzki ("Plaintiff") on September 20, 2011, pursuant to 42 U.S.C. § 1983, [1] is United States Magistrate Judge Andrew T. Baxter's Report–Recommendation recommending that both actions be *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii). (11–CV–1117, Dkt. No. 3; 11–CV–1118, Dkt. No. 3.) On October 7, 2011, Plaintiff filed Objections to Magistrate Judge Baxter's Report–Recommendation in both actions. (11–CV1117, Dkt. No. 4; 11–CV–1118, Dkt. No. 4.)

[1]     Both actions were originally docketed by the Court Clerk's office as personal injury actions under U.S.C. § 360 because of Plaintiff's Civil Cover Sheet. (Dkt. No. 1.) However, Magistrate Judge

Baxter's review of Plaintiff's claims in both actions correctly concluded that the claims in both actions are civil rights claims pursuant to 42 U.S.C. § 1983.

Based upon a *de novo* review of the filed papers in both actions, including those portions of the Report–Recommendation to which Plaintiff has objected, and the recommendations of Magistrate Judge Baxter, the Report–Recommendation is accepted and adopted in its entirety for the reasons stated therein. (11–CV–1117, Dkt. No. 3; 11–CV–1118, Dkt. No. 3.) The Court notes that among the reasons for Magistrate Judge Baxter's recommendation are (1) lack of venue, (2) the frivolousness of Plaintiff's claims (which arise from the alleged use of electronic "disorientation equipment" to shock him, "ke[eep] [him] up all night," and "harass[ ] [his] ... mind and body"), and (3) the vexatiousness of his litigation practices due to the more than 100 unmerited cases he has filed in federal district courts nationwide. (*Id.*)

*Plaintiff is cautioned that, should he continue to abuse the litigation process in this District, he will be directed to show cause as to why the Court should not issue an Order barring him from filing any future pro se actions in this Court without first obtaining leave of the Court, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to manage its docket so as to prevent abuse in its proceedings.*

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Baxter's Report–Recommendation in the two above-captioned actions is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that both of the two above-captioned actions are *sua sponte* ***DISMISSED*** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

The Clerk's Office is directed to close both actions.

*The Court certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from this Decision and Order would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 254090

---

2010 WL 276641
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Il SUN JUNG, Plaintiff,

v.

Mayor of New York Michael R. BLOOMBERG;
Governor of New York David A. Paterson
in their official capacity, Defendants.

No. 10 Civ. 0118(BMC).
|
Jan. 19, 2010.

**Attorneys and Law Firms**

Il Sun Jung, Brooklyn, NY, pro se.

### *MEMORANDUM AND ORDER*

COGAN, District Judge.

 **\*1** On January 12, 2010, plaintiff Il Sun Jung, appearing *pro se,* filed this action against defendants Mayor Bloomberg and Governor Paterson. Plaintiff paid the requisite filing fee to commence this action. For the reasons set forth below, the complaint is dismissed.

Plaintiff alleges that he is "a target of electronic harassment, mind control, directed energy weapons, organized stalking, electronic torture and human experimentation." Compl. at ¶ IV(1). Plaintiff further contends that:

> This Microwave Mafia blasted electromagnetic signals all over new york city without any reconization thus wanton violations. I requested city of new york to detect and monitor radio frequency that i broadcast and sent from hidden locations. I sent numerous

letters in the past and I don't know what's going on.

*Id.* at ¶ IV(10) [sic throughout]. Plaintiff alleges that Mayor Bloomberg and Governor Paterson have "all the power and authorities to prevent this kind of abuses and torture." *Id.* at ¶ IV(11).

Plaintiff requests a "Quest Diagnostics DNA Test" in order to determine "if there is implanted tracking devices existed in plaintiffs body." *Id.* at ¶ IV(8). Plaintiff also seeks $866,777.99 in damages and protection from electronic stalking and torture. *Id.* at ¶ VIII.

In reviewing plaintiff's complaint, the Court is mindful that, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008). However, "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances." *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000). An action is frivolous as a matter of law when, *inter alia,* "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy," or it is "based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal quotation and citation omitted).

Even under a liberal reading, plaintiff's allegations are "the product of delusion or fantasy" and are factually frivolous. *Id.* at 437; *see also Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). Accordingly, the complaint is dismissed as frivolous pursuant to *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000). Although plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

 **\*2** **SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 276641

---

                                                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2015 WL 1780638
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ramic ELDIN, Plaintiff,
v.
Veldin BARBER, et al., Defendants.

No. 6:15–CV–440 (MAD/ATB).
|
Signed April 20, 2015.

**Attorneys and Law Firms**

Ramic Eldin, Utica, NY, pro se.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Ramic Eldin. (Dkt. No. 1) Plaintiff Eldin has also filed an application to proceed in forma pauperis ("IFP") and a motion for appointment of counsel. (Dkt.Nos.3, 4). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

**I. *In Forma Pauperis ("IFP") Application***
A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law

or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. *Complaint***
The complaint is very short, but almost impossible to read, and it is difficult to determine what plaintiff is asking from the court. (Complaint ("Compl.") (Dkt. No. 1). There is no relief requested in the form-complaint. [1] (Compl. at ¶ 6). Plaintiff has attached a thirty-eight page exhibit to his complaint, and the court will attempt to read all plaintiff's submissions together to determine whether there is any possibility that a claim may be stated. Essentially, plaintiff complains that someone at the Veldin Barber Shop in Utica, New York, perhaps the barber's son, [2] is implanting surveillance equipment into plaintiff's head. Plaintiff claims that he has been the "victim" of "psychotronic weapons" for fifteen years, and is likely a "microwave victim." (Compl. at ¶ 5).

---

[1]    The section of the form-complaint has been left blank.

[2]

One of the documents attached to the complaint states that the owner of the barber shop is "Elvis Miljkovic." (Dkt. No. 1–1 at 6). Another document states that Elvis Miljkovic is the barber's son and works for the Sheriff's Department (not the Utica Police). This document appears to state that Mr. Mijkovic makes a lot of mistakes cutting hair, "as he is using blade [sic] that he covers with chemical [sic] that is numbing and then he implants microchips behind [both] ears." (Dkt. No. 1–1 at 2). There is no date on this document, and it is unclear even from the text when it was written.

**\*2** The court notes that the first page of plaintiff's exhibit contains one line in addition to his signature: "I want to reopen 6:04–CV–241." (Dkt. No. 1–1 at 1). In 04–CV–241, plaintiff sued L.B. Security Company and the Utica Police Department. On June 4, 2004, U.S. District Court Judge David N. Hurd dismissed plaintiff's amended complaint because it did not state a claim for relief. (Dkt. No. 8 in 04–CV–241). Judge Hurd had given plaintiff the opportunity to file an amended complaint when the original failed to comply with the Federal Rules. (Dkt. No. 4 in 04–CV–241).

The amended complaint did not cure the defects outlined by Judge Hurd. The amended complaint contained no specific allegations of fact, but was filled with "sweeping allegations that various parties and institutions were placing hidden surveillance equipment in his residence and the posting the acquired information on the internet." (*Id.* at 2) (footnote omitted). Notwithstanding the dismissal, plaintiff continued to file documents that were stricken by the court in 2005. (Dkt.Nos.17–20). On April 6, 2015, plaintiff filed a letter/ motion to "reopen" the case. (Dkt. No. 22). On April 10, 2015, Judge Hurd denied the plaintiff's motion and ordered that plaintiff was precluded from filing any additional papers in 04–CV–241 without prior approval of the court. On April 13, 2015, plaintiff filed this new action.

Several of the documents contained in plaintiff's current exhibit are documents that were filed in 04–CV–241. (Dkt. No. 1–1 at CM/ECF pp. 7, 10–12). Plaintiff apparently believes that he has acquired information since his case was dismissed in 2004 that would substantiate plaintiff's claims. He has included two type-written documents that detail his belief about the barber shop and its owner (neither of whom are named Veldin). (Dkt. No. 1–1 at 2–4). In the first memorandum, plaintiff states that the father of the "current" owner of a barbershop, a "deranged elderly man ... cuts hear [sic] wau above the ears that opens him a space to cut in a skin

and implant electrodes, microchips behind the ears...." (*Id.* at 2). Plaintiff later mentions that there is likely an implant in his arm, one in his eye that was removed, and gas that is activated by a device within his nose. (*Id.* at 3).

Plaintiff alleges that when he attempted to bring this information to the federal court, he was ignored. (*Id.* at 3). Plaintiff states that there is "something shady going on" because instead of meeting him in court, "they" threatened him through microwaves that if he went to court, he would never be able to find a job again. (*Id.* at 4). Plaintiff is very concerned about mind control attempts. He attempted to move to Europe, but he was told through microwaves to return to the United States. He hoped that the torture would stop after he came back to the United States, but this "mental water boarding" has continued to the present time. (*Id.*)

**\*3** Plaintiff has also included a memorandum that is dated January 14, 2005. (Dkt. No. 1–1 at 5). This memorandum may have been written by an attorney, because plaintiff is referred to as "client" throughout the document. This document begins by stating that "Client had previously started a lawsuit in Federal Court and that law suit was dismissed." (*Id.*) The memorandum states that the "client" feels that a chip has been implanted in his eyes, so that "he has a sort of tracking device so that they will know where he is at all times." (*Id.*) The chip was implanted in 2002 when plaintiff went to Sangertown Mall for a Glaucoma test. (*Id.*) Plaintiff believed that LB Security of Utica (a defendant in 04–CV–241); the Utica Police Department; the FBI; and potentially Mohawk Valley Community College ("MVCC") were involved in the surveillance. He thought that MVCC may have been using him as a research object for approximately three years. (*Id.*)

In this action, plaintiff's exhibit also contains a series of pages that appear to be printed from the Internet. (Dkt. No. 1–1 at 14–38). The pages list articles which relate to many different subjects, but many deal with mind control; human robotization; the CIA; psychotronic government mind control; and remote neural monitoring. Plaintiff also includes a series of excerpts from "Mind Control News Articles." (*Id.* at 27–38). Plaintiff alleges that these problems are destroying his employment and his life. (Compl. at p. 4–5). Plaintiff claims that he can not have a family, hold down a job, or own property because of this mind control. [3]

3      Plaintiff asserts various other facts, but this court will not elaborate on everything that is written in plaintiff's documents.

## III. Jurisdiction

### A. Legal Standards

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry,* No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler,* ——U.S. ——, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012); *Henderson ex rel. Henderson v. Shinseki,* ——U.S. ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011)). Federal courts are mandated to examine their own jurisdiction sua sponte at every stage of the litigation. *Id.*

Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants,* 537 F.3d 185, 191 (2d Cir.2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Thus, the court will consider possible bases for plaintiff's assertion of jurisdiction.

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff filed this complaint on a form reserved for civil rights actions under 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010); 42 U.S.C. § 1983.

**\*4** A person acts under color of state law when he or she acts in his or her official capacity "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York,* No. 12 Civ. 4699, 2013 WL 2311837, at *5–6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi,* No. 07–CV–6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful' that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)).

A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003) (citations omitted).

### B. Application

Plaintiff has named "Veldin Barber" as a defendant. As stated above, it appears that this is not an individual, but rather a barber "shop" in Utica. Plaintiff does not allege that the "shop" has done anything to harm plaintiff, and the shop is not an entity that may be sued. In fact, the form-complaint filed by plaintiff does not mention the barber or the barber shop. The form-complaint is a series of random statements about how plaintiff has been tortured by mind control, psychotronic weapons, and microwaves for fifteen years. (Dkt. No. 1).

Assuming that plaintiff wished to name a specific barber in the barber shop, that private individual would not act under color of state law. There would be no jurisdiction to sue that person under section 1983. While a private party may act under color of state law if he or she conspires with a state actor, plaintiff does not allege a conspiracy between the barber and the "police." In fact, the form-complaint does not even mention police. The court notes that plaintiff named the "police" in 04–CV–241, but there is absolutely no indication that the barber has conspired with anyone acting under color of state law.[4] Thus, the complaint may be dismissed as against "Veldin Barber," whether plaintiff was referring to an individual or to the barber shop.

4      Even if plaintiff had mentioned the police, conclusory allegations of conspiracy are insufficient to state a claim under section 1983. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (conslusory allegations are insufficient to state a constitutional claim).

## IV. *Police Department*

### A. Legal Standards

Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau,* 904 F.Supp.2d 244, 247 (E.D.N.Y. Nov.9, 2012) (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) (dismissing claim against the police department); *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) (same); *Umhey v. County of Orange,* 957 F.Supp. 525, 530–31 (S.D.N.Y.1997) (dismissing case against the County Board of Ethics); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992) (dismissing against police department). Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id. See also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)).

### B. Application

**\*5** In this case, the plaintiff names the "Police" as a defendant. Plaintiff may not sue the Police Department or the "Police" collectively unless he names specific police officers. Generally, if a pro se plaintiff names the wrong defendant, the court could substitute City of Utica for the "Police," however, as discussed below, even if plaintiff had named the proper municipal defendant, the court would still be constrained to recommend dismissal.

### IV. *Municipal Liability*

### A. Legal Standards

A municipality itself may be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington,* No. 13–CV–4378, 2014 WL 2475566, at \*3 (E.D.N.Y. Apr.4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries,* —— U.S. ——, 131 S.Ct. 447, 452, 178 L.Ed.2d 460 (2010)), *Rep't Rec. adopted in relevant part,* 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of

his constitutional rights, is it liable for the injury. *Monell,* 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.; Dominguez v. Beame,* 603 F.2d 337, 341 (2d Cir.1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris,* 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

### B. Application

There is absolutely no indication in this case that a claim of municipal liability is alleged. As stated above, plaintiff barely mentions the police in any of his documents. He does mention the Utica Police Department in one of the documents contained in his exhibit. (Dkt. No. 1–1 at 7). However, it is a document, dated February 1, 2004. It was submitted in support of plaintiff's previous action, which was dismissed by Judge Hurd. This document consists of a memorandum, written by plaintiff outlining how he submitted a complaint to an officer in the Utica Police Department, but states that the officer's response was insufficient, and plaintiff's complaint about "surveillance" was not resolved. First, plaintiff has no right to have the police investigate any claim;[5] second, Judge Hurd considered this document when dismissing the prior action; and third, if plaintiff is referring to the same incident as he described to Judge Hurd, the three year statute of limitations has run.[6] There is no indication that there was a municipal policy involved. Thus, the court will not order substitution of the City of Utica as a defendant, and the action may be dismissed as against the Police.

---

5    A plaintiff has no constitutional right to an investigation. *See e.g. Chavis v. Chappius,* No. 06–CV–543, 2015 WL 1472117, at \*16 (W.D.N.Y. Mar. 31, 2015) (no right to an investigation, and the failure to investigate did not cause plaintiff's injury) (citing *Berstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) (courts in the Second Circuit

have determined that there is no constitutional right to an investigation by government officials)); *Hunter v. City of New York,* 35 F.Supp.3d 310, 328 n. 17 (E.D.N .Y.2014) (citing cases).

6    Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). The federal court also borrows the tolling provisions for the state statute of limitations. *See Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). *See also Woods v. Candela,* 13 F.3d 574, 576 (2d Cir.), *vacated on other grounds,* 513 U.S. 810 (1994). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Assuming that the above is plaintiff's claim against the "Police," his cause of action would have accrued in 2004 when the police refused to investigate his claims. He clearly knew about the cause of action then because he raised the issue before Judge Hurd.

**V. Opportunity to Amend**

**A. Legal Standards**

**\*6**  Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation omitted).

**B. Application**

In this case, plaintiff is concerned that he is the victim of microwaves and psychotronic weapons. He brought an action making similar, if not identical, claims against some of the same defendants in 2004, and Judge Hurd dismissed the action. Judge Hurd denied plaintiff the opportunity to reopen

his 2004 action, and a few days later, he returned with this new case, making the same claims. Although plaintiff has attached a variety of updated articles that he has obtained from the Internet, discussing microwaves, psychotronic weapons, and mind control, his complaint is still rambling and disjointed. Even construing plaintiff's complaint to raise the "strongest arguments," the court finds that plaintiff has presented factual contentions that are "clearly baseless." *Neitzke,* 490 U.S. at 327. No attempt to amend will cure the problems with this complaint.

**IX. *Appointment of Counsel***

**A. Legal Standards**

There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). Each case must be decided on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

**B. Application**

Based upon a thorough review of the complaint, this court finds that plaintiff's complaint is frivolous and must be dismissed with prejudice. Thus, the complaint does not

meet the first requirement for appointment of counsel, and plaintiff's application is denied.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's application to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY,** and it is

 **\*7  ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED,** and it is

**RECOMMENDED,** that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) (i-ii) as frivolous and for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1780638

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2453485
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ramic ELDIN, Plaintiff,

v.

Veldin BARBER and Utica Police, Defendants.

No. 6:15–cv–440 (MAD/ATB).
|
Signed May 22, 2015.

**Attorneys and Law Firms**

Ramic Eldin, Utica, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiff commenced this civil rights action *pro se* on April 13, 2015 pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. In an Order and Report–Recommendation dated April 20, 2015, Magistrate Judge Andrew T. Baxter granted Plaintiff's *in forma pauperis* ("IFP") application for purposes of filing only and recommended that Plaintiff's complaint be dismissed for failure to state a claim and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Presently before the Court are Plaintiff's objections to Magistrate Baxter's Order and Report–Recommendation. *See* Dkt. No. 6.

**II. BACKGROUND**

As Magistrate Judge Baxter noted in his Order and Report–Recommendation, Plaintiff's complaint is difficult to read and does not request any relief. *See* Dkt. No. 5 at 3. Plaintiff's complaint is on a form designated for civil rights complaints pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff generally alleges that he has been a victim of torture by "psychotronic weapons" and "microwaving" for the past fifteen years. *See id.* at 4. [1] Plaintiff names two defendants: Veldin Barber and Police. *See id.* at 1. Based on the addresses provided by Plaintiff, it appears that Plaintiff is referring to the

Veldin Barber Shop in Utica, New York, and the Utica Police Department. As set forth in Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff appears to allege that someone at the Veldin Barber Shop implanted surveillance equipment into his head, thereby initiating Plaintiff's alleged mental torture and mind surveillance. *See* Dkt. No. 5 at 3. [2] In addition, Plaintiff attached a request to his complaint to reopen case number 6:04–CV–241. *See* Dkt. No. 1–1 at 1.

[1]   According to the attachments to Plaintiff's objections, "microwaving" appears to be a term for the use of microwave radiation to interfere with an individual's central nervous system, which Plaintiff's literature claims "interferes with decision making capacity [and] causes chronic stress and low efficiency." Dkt. No. 6 at 114. Plaintiff's literature describes "psychotronics" as "manipulating brain activity to achieve physiological outcomes." Dkt. No. 6–1 at 1.

[2]   For a more extensive summary of Plaintiff's factual claims, the Court refers to Magistrate Judge Baxter's Order and Report–Recommendation. *See* Dkt. No. 5 at 3–6.

In his Order and Report–Recommendation, Magistrate Judge Baxter granted Plaintiff's IFP application for purposes of filing only. *See* Dkt. No. 5 at 1. Turning to his review of the sufficiency of the allegations set forth in Plaintiff's complaint pursuant to 28 U.S.C. § 1915, Magistrate Judge Baxter first determined that Plaintiff failed to state a section 1983 claim against the Veldin Barber Shop because Plaintiff did not allege that any individual at the barber shop acted under color of state law. *See id.* at 8–9. Magistrate Judge Baxter then found that Plaintiff's claim against the Utica Police Department failed because the department does not have a legal identity separate from the City of Utica and cannot be sued. *See id.* at 9–10. Magistrate Judge Baxter further concluded that substituting the City of Utica for the "Police" would be futile because Plaintiff alleged no facts that would establish municipal liability. *See id.* at 10–13. Magistrate Judge Baxter then recommended that Plaintiff's complaint be dismissed without leave to amend because amendment would be futile. *See id.* at 13–14. Magistrate Judge Baxter also denied Plaintiff's motion for appointment of counsel after concluding that Plaintiff's claims do not seem likely to be of substance. *See id.* at 14–15.

**\*2** On April 27, 2015, Plaintiff filed a 260–page document labeled "Objection to Report." *See* Dkt. No. 6. Plaintiff's

filing includes thirty-nine handwritten pages, which contain disjointed and often illegible statements that largely describe Plaintiff's alleged mental torture over a period of thirteen years. *See id.* at 2–40. To the extent that the Court can decipher Plaintiff's allegations, Plaintiff references the use of "voice prints" to send Plaintiff's brain negative messages regarding Plaintiff and his family, the implantation of various disturbing mental images in Plaintiff's brain, mental threats, and various negative consequences suffered by Plaintiff, including failure in school, the loss of various jobs, and depression. *See id.* Plaintiff also appears to allege that a particular mental attack caused his body to fail and that he spent time in a hospital as a result of this attack. *See id.* at 16–20. Plaintiff's objections do not discuss Magistrate Judge Baxter's Order and Report–Recommendation, assert any legal theories, or identify any individuals or entities responsible for the alleged mental attacks on Plaintiff.

### III. DISCUSSION

**A. Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In making this determination, "the court has the duty to show liberality towards *pro se* litigants," however, "there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas,* 848 F.Supp. 332, 333–34 (N.D.N.Y.1994) (internal citations omitted). "[I]n a *pro se*

case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations omitted).

**B. 42 U.S.C. § 1983**

*1. Action under color of state law*

**\*3** "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). A defendant acts under color of state law when he or she "ha[s] exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 59 (1988) (quotation omitted). "A private individual acts under color of law within the meaning of section 1983 when he acts together with state officials or with significant state aid." *Kadic v. Karadzic,* 70 F.3d 232, 245 (2d Cir.1995). "Conduct that is ostensibly private can be fairly attributed to the state only if there is 'such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." ' " *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)).

As Magistrate Judge Baxter explained in his Order and Report–Recommendation, Plaintiff has not alleged any facts that implicate any specific individual at the Veldin Barber Shop in the alleged violation of Plaintiff's constitutional rights. *See* Dkt. No. 5 at 8–9. Even if the attachments to Plaintiff's complaint can be read as alleging that the father of the current owner of the Veldin Barber Shop violated Plaintiff's rights by implanting a microchip behind Plaintiff's ear, *see* Dkt. No. 1–1 at 2, Plaintiff has not alleged any nexus between that individual's action and the State. Thus, Plaintiff has alleged no facts suggesting that the individuals at the Veldin Barber Shop acted under color of state law. Plaintiff's objections do not address this defect in Plaintiff's complaint, nor even mention the Veldin Barber Shop or any of its employees. Accordingly, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff's complaint must be dismissed as against "Veldin Barber" for failure to state a claim under 42 U.S.C. § 1983.

### 2. Municipal liability

As Magistrate Judge Baxter set forth in his Order and Report–Recommendation, the Utica Police Department is an administrative arm of the City of Utica and therefore cannot be sued. *See* Dkt. No. 5 at 9–10. Furthermore, a municipality may only be sued under § 1983 "when execution of [the municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U .S. 658, 694 (1978). Thus, municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* ––– U.S. ––––, 131 S.Ct. 1350, 1359 (2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

**\*4** Magistrate Judge Baxter correctly found that Plaintiff's allegations do not include any facts indicating that an alleged deprivation of Plaintiff's constitutional rights occurred pursuant to an official municipal policy of the City of Utica. Again, Plaintiff's objections do not address this conclusion. The only reference to the Utica Police Department in Plaintiff's objections and corresponding attachments is an article which discusses an Officer of the Year award presented to Officers George DeAngelo and Mark Rahn and an Award of Commendation awarded to Sargent Anthony Martino in April 2012. *See* Dkt. No. 6 at 46–47. Plaintiff does not explain what purpose this article serves or how it relates to his claims. Plaintiff's allegations are plainly insufficient to support a claim that a member of the Utica Police Department deprived him of his constitutional rights, let alone that any such deprivation was pursuant to an official policy.

In addition, to the extent that Plaintiff's filings allege that the Utica Police Department performed unlawful surveillance on him, *see* Dkt. No. 1–1 at 7–8, Magistrate Judge Baxter correctly determined that Plaintiff's claims are barred as Plaintiff presented these allegations to Judge Hurd in a prior action in which Judge Hurd dismissed Plaintiff's complaint for failure to state a claim under section 1983, *see* Dkt. No. 5 at 12; *see also Ramic v. LB Security Service,* No. 04–cv–00241, Dkt. No. 5 (alleging the same facts pertaining to Plaintiff's January 31, 2004 interaction with the Utica Police Department as alleged in the attachments to Plaintiff's instant complaint); *Ramic,* No. 04–cv–00241, Dkt. No. 8 at 3 (dismissing Plaintiff's § 1983 claims as against the Utica

Police Department). Plaintiff filed a motion to reopen his case against, *inter alia,* the Utica Police Department on April 6, 2015, which Judge Hurd denied. *Ramic,* No. 04–cv–00241, Dkt. No. 22, 23. Plaintiff's attempt to circumvent Judge Hurd's decision by refiling his allegations and request to reopen his prior case under the guise of a new complaint is unavailing.

### C. Leave to Amend

Magistrate Judge Baxter concluded that Plaintiff's factual contentions are " 'clearly baseless,' " such that any attempt to amend his complaint would be futile. *See* Dkt. No. 5 at 14 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). The Court agrees. *See Neitzke,* 490 U.S. at 327 ("Examples of [clearly baseless factual contentions] are claims describing fantastical or delusional scenarios, claims with which federal district judges are all too familiar."). As such, the Court will not grant Plaintiff leave to amend.

### IV. CONCLUSION

After carefully reviewing Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's April 20, 2015 Order and Report–Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**\*5 ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with prejudice;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

### IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 2453485

---

2024 WL 1107903
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

DeAnna LETRAY, Plaintiff,

v.

CITY OF WATERTOWN; Colleen O'Neill, Jefferson
County Sheriff; Kristopher M. Spencer; Joel Dettmer;
Charles Donoghue, City of Watertown Police Chief;
George Cummings; Samuel White; Jefferson County;
Deborah Davis; and Patrick Larkins, Defendants.

5:20-CV-1194 (FJS/TWD)
|
Signed February 22, 2024

**Synopsis**
**Background:** Transgender woman arrestee brought action
under § 1983 and New York State law, alleging that city,
county, county jail officers, and county sheriff had violated
her Fourth Amendment rights, her equal protection rights
under the Fourteenth Amendment and New York State
Constitution, and rights under the New York State Civil
Rights Law (NYCRL). City, sheriff, and officers moved
for summary judgment, and arrestee moved for summary
judgment with respect to her Fourth Amendment claim.

**Holdings:** The District Court, Frederick J. Scullin, Senior
District Judge, held that:

[1] jail's policy of requiring all arrestees entering jail to
undergo strip search and visual body-cavity search without
conducting individualized inquiry was consistent with Fourth
Amendment;

[2] arrestee's guilty plea in New York state court did not bar
her claims under *Heck*;

[3] genuine issue of material fact as to whether arrestee was
subjected to purposeful differential treatment by county jail
officials precluded summary judgment on equal protection
and NYCRL claims;

[4] genuine issue of material fact of whether policy of
treating transgender woman as males caused arrestee's
injuries precluded summary judgment on § 1983 municipal
liability claim; and

[5] arrestee had Article III standing to seek injunction.

Plaintiff's motions denied; defendants' motions granted in part
and denied in part.

**Procedural Posture(s):** Other; Motion for Summary
Judgment.

West Headnotes (27)

**[1]     Prisons**  ⟜  Search, seizure, and confiscation

County jail's policy of requiring all arrestees
entering jail to undergo strip search and
visual body-cavity search without conducting
individualized inquiry into need for either search
was consistent with the Fourth Amendment,
precluding transgender woman arrestee's § 1983
claim against policy; although arrestee could
post bail and never be sent to its general
population or have contact with other detainees,
determining whether arrestee was to be sent
to general population before conducting search
involved murky inquiry that would create
inconsistency and uncertainty, jail had weighty
penological interests regarding safety and health
of officers and arrestees in preventing influx
of everyday items that posed significant safety
dangers in correctional facility, and arrestee did
not introduce substantial evidence that policy
was exaggerated response or not reasonably
related to penological concerns. U.S. Const.
Amend. 4; 42 U.S.C.A. § 1983.

**[2]     Constitutional Law**  ⟜  Federal/state cognates

New York's Equal Protection Clause is no
broader in coverage than the Federal provision.
U.S. Const. Amend. 14; N.Y. Const. art. 1, § 1.

**[3]     Civil Rights**  ⟜  Discrimination in General

The Court analyzes a New York State Civil
Rights Law (NYCRL) discrimination claim
using the same framework as applied to state
and federal equal protection claims because the

statute entitles individuals to the equal protection of the laws of this state or any subdivision thereof. U.S. Const. Amend. 14; N.Y. Const. art. 1, § 1; N.Y. Civil Rights Law § 40-c.

**[4]**   **Constitutional Law**  🔑  Similarly situated persons; like circumstances

   **Constitutional Law**  🔑  Similarly situated persons; like circumstances

The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all persons similarly situated alike, avoiding classifications that are arbitrary or irrational and those that reflect a bare desire to harm a politically unpopular group. U.S. Const. Amend. 14.

**[5]**   **Constitutional Law**  🔑  Intentional or purposeful action requirement

   **Constitutional Law**  🔑  Similarly situated persons; like circumstances

   **Constitutional Law**  🔑  Levels of Scrutiny

To prove a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must establish that (1) he or she was treated differently from others similarly situated because of intentional or purposeful discrimination and (2) the disparity in treatment cannot survive the appropriate level of scrutiny. U.S. Const. Amend. 14.

**[6]**   **Civil Rights**  🔑  Criminal prosecutions

*Heck* precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions; the purpose of the rule is twofold: first to avoid the use of § 1983 actions to substitute for writs of habeas corpus to challenge convictions, and second, to avoid the prospect of inconsistency between a conviction and a subsequent successful constitutional challenge to that conviction's underpinning in a civil action. 42 U.S.C.A. § 1983.

**[7]**   **Civil Rights**  🔑  Criminal prosecutions

Transgender woman arrestee's guilty plea in New York state court to disorderly conduct, harassment, and trespass did not bar her § 1983 claim alleging violation of her Fourteenth Amendment equal protection rights, equal protection rights under the New York Constitution, and New York State Civil Rights Law claims under *Heck* against city and its police chief based on her alleged differential treatment by jail officials during her arrest, booking, and detention; finding that officials had treated arrestee differently did not necessarily demonstrate invalidity of her guilty plea, guilty plea was about unrelated domestic dispute, and arrestee was only challenging defendants' conduct during course of her arrest, booking, and detention. U.S. Const. Amend. 14; N.Y. Const. art. 1, § 1 42 U.S.C.A. § 1983; N.Y. Civil Rights Law § 40-c.

**[8]**   **Constitutional Law**  🔑  Intentional or purposeful action requirement

To act with "discriminatory purpose," for purposes of Fourteenth Amendment equal protection claim, means to select or reaffirm a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. U.S. Const. Amend. 14.

**[9]**   **Constitutional Law**  🔑  Intentional or purposeful action requirement

A plaintiff asserting a Fourteenth Amendment equal protection claim need not point to a specific comparator if a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus towards an identifiable group. U.S. Const. Amend. 14.

**[10]**   **Constitutional Law**  🔑  Discrimination and Classification

Verbal abuse constitutes actionable differential treatment, for purposes of Fourteenth Amendment equal protection claim, if

accompanied by physical abuse or an appreciable psychological injury. U.S. Const. Amend. 14.

**[11]**   **Civil Rights** 🔑 Criminal law enforcement; prisons

**Summary Judgment** 🔑 Prisons and jails

Genuine issue of material fact as to whether arrestee was subjected to purposeful differential treatment by county jail officials during her arrest, booking, and detention because of animus towards her status as a transgender person, resulting in physical abuse and appreciable psychological injury precluded summary judgment in favor of city and its police chief on arrestee's § 1983 equal protection claims under the Fourteenth Amendment and New York State Constitution and New York State Civil Rights Law, in absence of any justification by defendants for alleged differential treatment. U.S. Const. Amend. 14; N.Y. Const. art. 1, § 1; 42 U.S.C.A. § 1983; N.Y. Civil Rights Law § 40-c.

**[12]**   **Constitutional Law** 🔑 Sex or gender

Differential treatment based on sex triggers heightened scrutiny under the Fourteenth Amendment Equal Protection Clause. U.S. Const. Amend. 14.

**[13]**   **Constitutional Law** 🔑 Intermediate scrutiny in general

**Constitutional Law** 🔑 Sexual orientation

Classifications of a quasi-suspect class, including transgender people, trigger heightened scrutiny under the Fourteenth Amendment's Equal protection Clause. U.S. Const. Amend. 14.

**[14]**   **Constitutional Law** 🔑 Intermediate scrutiny in general

Courts use the following four factors to determine whether a group constitutes a quasi-suspect class for Fourteenth Amendment equal protection purposes: (1) whether the class has historically been subject to discrimination; (2) if

the class has a defining characteristic that bears a relation to its ability to contribute to society; (3) whether the class may be defined as a discrete group by obvious, immutable, or distinguishing characteristics; and (4) whether the class is a minority lacking political power. U.S. Const. Amend. 14.

**[15]**   **Constitutional Law** 🔑 Sex or gender

Heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause is a demanding standard that requires the government to demonstrate an exceedingly persuasive justification for its differential treatment; specifically, the government must demonstrate that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives, and the justification must be genuine, and it may not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females. U.S. Const. Amend. 14.

**[16]**   **Civil Rights** 🔑 Liability of Public Employees and Officials

A municipal official is personally liable under § 1983 if the official's own individual actions cause an injury to the plaintiff's constitutional rights. 42 U.S.C.A. § 1983.

**[17]**   **Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

Although a municipality is not liable for all constitutional violations committed by its employees under the theory of respondeat superior, a municipality is liable under § 1983 if its policy causes a constitutional injury. 42 U.S.C.A. § 1983.

**[18]**   **Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

When a subordinate municipal official is alleged to have committed a constitutional violation, municipal liability under § 1983 turns on the plaintiff's ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority. 42 U.S.C.A. § 1983.

**[19]    Civil Rights** 👈 Governmental Ordinance, Policy, Practice, or Custom

"Policymaking authority," for purpose of § 1983 municipal liability claim, exists if the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. 42 U.S.C.A. § 1983.

**[20]    Civil Rights** 👈 Governmental Ordinance, Policy, Practice, or Custom

To establish that the actions of higher ranking municipal officials with policymaking authority caused plaintiff's injuries, as required for § 1983 municipal liability claim, the plaintiff must point to a policymaker's deliberate choice to follow a course of action that is the moving force behind the constitutional violation. 42 U.S.C.A. § 1983.

**[21]    Civil Rights** 👈 Criminal law enforcement; prisons

**Summary Judgment** 👈 Prisons and jails

Genuine issue of material fact of whether city police chief's policy of treating transgender woman as males, without regard to gender identity, led officers to categorically equate transgender women with men, disregard their gender identity, and caused officers' alleged verbal abuse towards transgender woman arrestee, removal of her wig, and their physical assault while removing her wig precluded summary judgment on arrestee's § 1983 municipal liability claim against city and its police chief. 42 U.S.C.A. § 1983.

**[22]    Federal Civil Procedure** 👈 In general; injury or interest

To invoke federal jurisdiction, a plaintiff bears the burden of establishing Article III standing for each form of relief sought. U.S. Const. art. 3, § 2, cl. 1.

**[23]    Injunction** 👈 Persons entitled to apply; standing

Article III standing to seek injunctive relief requires the plaintiff to show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision; a plaintiff makes this showing when the relief sought would serve to eliminate any effects of the alleged legal violation that produced the injury in fact. U.S. Const. art. 3, § 2, cl. 1.

**[24]    Injunction** 👈 Persons entitled to apply; standing

A plaintiff makes the required showing for Article III standing for injunctive relief when the relief sought would serve to eliminate any effects of the alleged legal violation that produced the injury in fact. U.S. Const. art. 3, § 2, cl. 1.

**[25]    Injunction** 👈 Particular Subjects of Relief

When seeking an injunction to alter records, the plaintiff need not show that a favorable decision will relieve their every injury; instead, Article III only requires that some form of altering the records would at least partially redress the alleged injury. U.S. Const. art. 3, § 2, cl. 1.

**[26]    Injunction** 👈 Persons entitled to apply; standing

In general, the hurdle a plaintiff must clear to demonstrate that an injury is redressable through injunctive relief, as required for Article III standing, is low. U.S. Const. art. 3, § 2, cl. 1.

[27]    Civil Rights 🔑 Criminal law enforcement;
         prisons

> Transgender woman arrestee had Article III
> standing to seek injunction in § 1983 action
> ordering city and its police chief to identify
> records related to her arrest and to correct those
> records to properly identify her "as a woman,
> not a man," delete her booking photo depicting
> her without her hairpiece from its records, and
> "destroy any hard copies of the photo, and cease
> providing public access to the photo"; arrestee
> alleged that defendants violated her rights under
> the Fourteenth Amendment Equal Protection
> Clause by disregarding her stated gender identity
> during her booking, ultimately creating records
> and a booking photograph that misrepresented
> her gender identity, and correcting records would
> redress some ongoing effects of her alleged
> injuries because city employees and public
> would no longer have access to records. U.S.
> Const. art. 3, § 2, cl. 1; U.S. Const. Amend. 14;
> 42 U.S.C.A. § 1983.

> More cases on this issue

**Attorneys and Law Firms**

JOSHUA T. COTTER, ESQ., SAMUEL C. YOUNG, ESQ.,
LEGAL SERVICES OF CENTRAL NEW YORK, 221
South Warren Street, Suite 300, Syracuse, New York 13202,
Attorneys for Plaintiff.

MOLLY BIKLEN, ESQ., ROBERT A. HODGSON, ESQ.,
JESSICA PERRY, ESQ., VERONICA SALAMA, ESQ.,
NEW YORK CIVIL LIBERTIES UNION, 125 Broad Street,
19th Floor, New York, New York 10004, Attorneys for
Plaintiff.

JONATHAN B. FELLOWS, ESQ., COLLIN M. CARR,
ESQ., BOND, SCHOENECK & KING, PLLC, One Lincoln
Center, Syracuse, New York 13202, Attorneys for Defendants
City of Watertown, Charles Donoghue, George Cummings
and Samuel White.

KAYLA A. ARIAS, ESQ., TERESA M. BENNETT, ESQ.,
BARCLAY DAMON LLP, Barclay Damon Tower, 125 East
Jefferson Street, Syracuse, New York 13202, Attorneys for

Defendants Colleen O'Neill, Kristopher M. Spencer, Joel
Dettmer, Jefferson County, Deborah, Davis, and Patrick
Larkins.

## MEMORANDUM-DECISION AND ORDER

SCULLIN, Senior Judge

## I. INTRODUCTION

**\*1**  Plaintiff brought this action pursuant to 42 U.S.C. §
1983 and New York State law, alleging that Defendants City
of Watertown, Jefferson County, Colleen O'Neill, Kristopher
M. Spencer, Charles Donoghue, Joel Dettmer, George
Cummings, Virginia Kelly, [1] Patrick Larkins, Deborah Davis,
and Samuel White violated her Fourteenth Amendment equal
protection rights, her New York State Constitution equal
protection rights, and New York State Civil Rights Law
("NYCRL") § 40-c. See Dkt. No. 58, Second Amended
Complaint, at ¶¶ 92-107. Plaintiff also brought a claim
alleging that Defendants City of Watertown, Jefferson
County, O'Neill, Spencer, Donoghue, and Dettmer violated
her Fourth Amendment rights. See id. at ¶¶ 72-77.

[1]     The parties have stipulated to dismiss Defendant
        Kelly from this action. See Dkt. No. 105.

Defendants City of Watertown and Donoghue now move
for summary judgment with respect to Plaintiff's Fourth
Amendment, Fourteenth Amendment equal protection, New
York State equal protection, and NYCRL § 40-c claims. See
Dkt. No. 94. Plaintiff moves for summary judgment with
respect to her Fourth Amendment claim against Defendants
City of Watertown, Jefferson County, O'Neill, Spencer,
Donoghue and Dettmer. [2] See Dkt. No. 106.

[2]     Plaintiff's request for oral argument, see Dkt. No.
        106 at 2, is denied.

## II. BACKGROUND

**A. Facts** [3]

[3]     Unless otherwise noted, the facts are not in dispute.

*1. Plaintiff's gender identity*

Plaintiff is a transgender[4] woman. *See* Dkt. No. 107, Plaintiff's Statement of Material Facts ("SMF"). Since 2010, Plaintiff has lived "in her affirmed female gender," wearing women's clothing and prosthetic breasts, putting on makeup, wearing a feminine wig, and going by the name "DeAnna." *See id.* at ¶¶ 51-52, 80. Although she has used the name "DeAnna LeTray" publicly since 2010, she did not obtain a court-ordered name change until 2019. *See id.* at ¶ 46. Prior to 2019, Plaintiff's New York State driver's license listed her sex as male and displayed her "deadname,"[5] Anthony Campanaro. *See id.* at ¶ 43.

[4]     The parties agree that a transgender individual is someone whose gender identity is different from their birth-assigned sex. *See* Dkt. No. 107 at ¶ 48.

[5]     The parties agree that the term "deadname" refers to the name a transgender person was given at birth and no longer uses upon transitioning. *See* Plaintiff's SMF at ¶ 122 n.6.

### *2. Domestic dispute and arrest*

On September 28, 2017, Plaintiff presented as a woman: she wore makeup, a long red wig, boho pants, a crop top, prosthetic breasts, and carried a purse. *See id.* at ¶ 80. That night, she was involved in a domestic dispute with Josh Coffey. *See id.* at ¶¶ 8, 10-14. Plaintiff confronted Coffey at his residence, banging on doors and breaking a window; Coffey threatened Plaintiff with a shotgun. *See id.* at ¶¶ 2, 8, 13, 14, 85. Watertown Police[6] Officers Cummings and White responded to Coffey's residence. *See id.* at ¶ 15.

[6]     During all relevant times, Defendant Donohue served as the Watertown Police Chief. *See* Plaintiff's SMF at ¶¶ 40, 59-61, 161.

**\*2** When initially interacting with the officers, Plaintiff explained that she was a transgender woman. *See id.* at ¶¶ 99, 101. She provided the officers with the name that appeared on her government-issued identification and with her preferred name, "DeAnna LeTray." *See id.* Plaintiff claims that Officer Cummings called her a "guy," "a man dressed like a woman," a "liar," asked her "how long have you dressed like that?," and questioned her about her sexuality and genitalia. *See id.* at ¶ 101. After Plaintiff indicated that she planned to walk home, she claims that Officer Cummings stated," "you have serious mental problems – you are a guy dressed like a woman ... we can't let you walk the streets looking and dressed like that." *See id.* at ¶¶ 102-03. During his deposition, Officer Cummings

testified that he did not make any comments about Plaintiff's appearance. *See id.* at ¶ 104. Plaintiff additionally claims that, throughout her arrest, the officers referred to her by male pronouns and her deadname; mocked the way she dressed; and repeatedly called her "a man dressed like a woman." *See id.* at ¶ 112.

Officer Cummings arrested Plaintiff for criminal mischief and discovered that she possessed MDMA, a controlled substance. *See id.* at ¶¶ 21, 23. Officer White transported Plaintiff to the Watertown police station for booking. *See id.* at ¶¶ 22, 105.

### *3. Booking*

Officers ordered Plaintiff to remove her wig for her booking photograph, despite testifying that they were able to identify Plaintiff as the same person with her wig and without her wig and that they did not have any basis for believing that Plaintiff was trying to hide her identity.[7] *See id.* at ¶¶ 26, 114-16. Plaintiff did not want to be photographed without her wig, which she considered "her hair." *See id.* at ¶ 26. Plaintiff asked the officers if she could remove her makeup because she felt it would be humiliating to take the photo with makeup on but without her wig. *See id.* at ¶ 123. Officers refused and instructed Plaintiff to go into one of the interview rooms adjacent to the booking area. *See id.* at ¶ 28.

[7]     Officer Cummings also testified during his deposition that women wearing synthetic hair in the form of a weave are not required to remove it for booking photographs and that he could have, but chose not to, allowed Plaintiff to take two photos – one with and one without her wig. *See* Plaintiff's SMF at ¶¶ 116-17.

On her way to the room, Plaintiff picked up her hairclip and began putting it into her hair. *See id.* at ¶¶ 29-30. Officer Cummings claims that he ordered her to drop the hairclip, and she refused. *See id.* at ¶ 30. Plaintiff denies that she was ordered to drop her hairclip; instead, she claims that, after she told Officer Cummings that she was holding a hairclip, he threw her to the ground and ripped her wig and part of her natural hair out of her head. *See id.* Plaintiff claims that Officer Cummings then told her, "you are going to go to the jail and get strip searched ... we are going to show you that you are a man. You are going to love that." *See id.* at ¶ 131. Officers transported Plaintiff to Jefferson County Correctional Facility ("JCCF"). *See id.* at ¶ 32.

### *4. Strip search at JCCF*

By agreement, Watertown Police Department ("WPD") brings certain arrestees to JCCF. [8] *See id.* at ¶ 138. JCCF holds the arrestees until arraignment, at which time WPD transports the individual to court. *See id.* The WPD arrestees are held in holding cells alone, not in the jail's general population. *See id.* at ¶¶ 142-43. However, if the arrestee is unable to post bail following arraignment, the arrestee is brought back to JCCF and admitted to general population. *See* Dkt. No. 113, Defendants' Responses to Plaintiff's SMF, at ¶¶ 186-187.

[8]     During all relevant times, Defendant Spencer was the administrator of JCCF and Defendant O'Neill was the Jefferson County Sheriff. *See* Plaintiff's SMF at ¶¶ 155-60.

JCCF policy requires all arrestees entering the jail to undergo a strip search and visual body-cavity search. *See* Plaintiff's SMF at ¶¶ 148-49. There is no individualized inquiry into the need for either search. *See id.* at ¶ 154. Upon her arrival and pursuant to JCCF policy, Plaintiff was subjected to a strip search and visual body-cavity search. [9] *See id.* at ¶ 179. Plaintiff was held overnight and arraigned the next morning on misdemeanor charges for criminal mischief, possession of a controlled substance, and obstruction of governmental administration. *See id.* at ¶¶ 41, 182. Plaintiff never entered the jail's general population and was released after posting bail. *See id.* at ¶¶ 186-87.

[9]     Defendants Davis, Larkins and Dettmer were JCCF corrections officers who were on duty during Plaintiff's search. *See* Dkt. No. 58 at 3; Dkt. No. 113-1 at 2; Dkt. No. 107-11 at 1.

**\*3** Ultimately, Plaintiff pled guilty to the following violations: disorderly conduct, harassment, and trespass. *See* Dkt. No. 94-21 at 8. WPD's records related to Plaintiff's arrest document her as a male, use he/him pronouns, and refer to her by her deadname. *See* Plaintiff's SMF at ¶ 106.

### B. Procedural history

After the Court dismissed Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), *see* Dkt. No. 7, Plaintiff filed amended pleadings, *see* Dkt. Nos. 12, 58. Plaintiff's second amended complaint contains eight causes of action: (1) unreasonable strip search in violation of the Fourth Amendment against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, and Dettmer; (2) sexual assault in

violation of the Fourth and Fourteenth Amendments against Defendant Dettmer; (3) unreasonable body-cavity search in violation of the Fourth Amendment against Defendant Dettmer; (4) failure to intervene in violation of the Fourteenth Amendment against Defendants Cummings, Larkins, and Davis; (5) excessive use of force in violation of the Fourth Amendment against Defendants Cummings, White and Dettmer; (6) denial of equal protection in violation of the Fourteenth Amendment against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Kelly, Larkins, Davis and White; (7) denial of equal protection in violation of the New York State Constitution against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Kelly, Larkins, Davis, and White; and (8) discrimination in violation of NYCRL § 40-c against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Kelly, Larkins, Davis, and White. *See* Dkt. No. 58, Second Amended Compl. at ¶¶ 72-107.

Defendants City of Watertown and Donohue now move for summary judgment with regard to Plaintiff's first, sixth, seventh and eighth causes of action. *See* Dkt. No. 94. Plaintiff moves for summary judgment with regard to her first cause of action. *See* Dkt. No. 106.

### III. DISCUSSION

### A. Standard of review

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart,* 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005)). Summary judgment is inappropriate "where a review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."

**LeTray v. City of Watertown, --- F.Supp.3d ---- (2024)**
Case 5:24-cv-00438-GTS-TWD  Document 7  Filed 05/06/24  Page 65 of 76

2024 WL 1107903

*Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

**B. Fourth Amendment claim based on strip-search policy**

Defendants [10] contend that JCCF's strip-search policy was constitutional given the safety concerns of the correctional facility and the Supreme Court's reasoning in *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012). *See* Dkt. No. 113-5 at 3-9. [11]

[10]   In the context of Plaintiff's Fourth Amendment claim related to JCCF's strip-search policy, the Court uses the term "defendants" to refer to Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, and Dettmer.

[11]   Defendants also raise arguments based on qualified immunity, municipal liability, and personal involvement. *See* Dkt. No. 113-5 at 9-13; Dkt. No. 94-21 at 9-12. However, because the Court concludes that there was no Fourth Amendment violation, it need not reach these arguments.

**\*4** Plaintiff counters that JCCF's strip-search policy was unconstitutional because *Florence* is inapposite and the Fourth Amendment requires individualized reasonable suspicion to strip search an arrestee who is charged with a minor offense and who is not guaranteed to enter general population or have contact with other detainees. *See* Dkt. No. 106-1 at 6-8; Dkt. No. 116 at 2-4.

The Court agrees with Defendants. Before *Florence*, the Second Circuit held that individuals arrested for misdemeanors could not be lawfully strip searched without individualized reasonable suspicion that the individual possessed contraband. *See Weber v. Dell*, 804 F.2d 796, 799-802 (2d Cir. 1986). However, in *Florence*, the Supreme Court held that the Fourth Amendment permits strip searching all arrestees who *will* enter general population, regardless of the charged offense. *See Florence*, 566 U.S. at 326-40, 132 S.Ct. 1510. The Supreme Court declined to address whether individualized reasonable suspicion was required for arrestees "without assignment to the general jail population and without substantial contact with other detainees." *Id.* at 338-39, 132 S.Ct. 1510. As a result, it is unsettled whether "categorically strip-searching ... detainees charged with misdemeanors and segregated *alone* from the general

population" passes constitutional muster. *In re Nassau Cnty. Strip Search Cases*, 639 F. App'x 746, 750-51 (2d Cir. 2016) (summary order).

Although *Florence* involved an arrestee assigned to general population, the reasoning in *Florence* provides the controlling framework for evaluating JCCF's policy. In *Florence*, the Court emphasized "the importance of deference to correctional officials" and the related rule that "a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.' " *Florence*, 566 U.S. at 326, 132 S.Ct. 1510 (quotation and other citations omitted). The Court explained that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," *id.* at 328, 132 S.Ct. 1510, and that " 'a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review.' " *Id.* at 330-31, 132 S.Ct. 1510 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 347, 121 S. Ct. 1536, 149 L.Ed.2d 549 (2001)). Accordingly, the Second Circuit has characterized *Florence*'s holding as follows: "absent 'substantial evidence' of an 'exaggerated' response to penological concerns, the 'security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband.' " *Murphy v. Hughson*, 82 F.4th 177, 185 (2d Cir. 2023) (quotation omitted); *see Kenlock v. Mele*, No. 22-2799, 2023 WL 8538182, \*2 (2d Cir. Dec. 11, 2023) (noting that "[Fourth Amendment Prison p]olicies will be upheld if they are reasonably related to a legitimate penological interest.") (citing *Harris v. Miller*, 818 F.3d 49, 57-58 (2d Cir. 2016) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *see also Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012) (application to pretrial detainees))).

**[1]** Applying *Florence* to this case, the Court finds that JCCF's policy is consistent with the Fourth Amendment. Although JCCF's institutional safety concerns are slightly diminished by the fact that the arrestee may post bail and never be sent to general population or have contact with other detainees, JCCF still has weighty penological interests regarding the safety and health of officers and arrestees. For instance, in *Florence*, the Court discussed how everyday

items may pose significant safety dangers in a correctional facility: lighters and matches are fire and arson risks or potential weapons, pills and medications enhance suicide risk, chewing gum can block locking devices, hair-pins can open handcuffs, wigs can conceal drugs and weapons, and something as simple as an overlooked pen can pose a substantial risk. *See Florence*, 566 U.S. at 330-33, 132 S.Ct. 1510 (stating that "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process"). JCCF also has an interest in preventing the spread of "lice or contagious infections" from arrestees to correctional staff, and in being able to identify "wounds or other injuries [on arrestees] requiring immediate medial attention." *Id.* at 330-31, 132 S.Ct. 1510 (noting that "[i]t may be difficult to identify and treat these problems until detainees remove their clothes for a visual inspection" (citation omitted)).

 **\*5** Plaintiff has not introduced substantial evidence that JCCF's policy is an exaggerated response or not reasonably related to these penological concerns. Moreover, Plaintiff's position that the Fourth Amendment prohibits strip searching misdemeanor arrestees unless officials are certain that the arrestee will be entered into general population would permit many arrestees to retain and use contraband while awaiting arraignment and while being transported to arraignment. *See id.* at 322, 132 S.Ct. 1510 (stating that "[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies").

Beyond the fact that Plaintiff's position would saddle corrections officials with unwanted safety risks and is inconsistent with the deference discussed in *Florence*, determining when an arrestee is definitively destined for general population involves a murky inquiry that would create inconsistency and uncertainty. *See id.* at 322-23, 132 S.Ct. 1510 (noting that, "[i]n addressing [Fourth Amendment claims] courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security"). According, because JCCF's policy is reasonably related to legitimate penological concerns, Plaintiff's Fourth Amendment claim, contained in her first cause of action, fails as a matter of law.[12]

[12]    Since JCCF's strip-search policy is constitutional as a matter of law and Plaintiff has had a full and fair opportunity to argue otherwise, the Court finds that

non-moving Defendants Jefferson County, O'Neill, Spencer, and Dittmer are also entitled to summary judgment with regard to Plaintiff's first cause of action. *See* Fed. R. Civ. P. 56(f)(1); *Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir. 1983) (stating that "[a] court may grant summary judgment *sua sponte* when it is clear that a case does not present an issue of material fact" (emphasis in original and citations omitted)); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (stating that "[t]he prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment *against* the moving party ... the threat of procedural prejudice is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party" (emphasis in original)); *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997) (stating that "[n]otice to the moving party of the intention to grant summary judgment in favor of the non-moving party is not required ... where summary judgment is granted to the non-moving party on an issue which has been fully raised by the moving party" (citations omitted)).

## C. Equal protection and NYCRL claims[13]

[13]    The Court analyzes Plaintiff's federal and state equal protection claims identically because New York's "Equal Protection Clause 'is no broader in coverage than the Federal provision.' " *Hernandez v. Robles*, 7 N.Y.3d 338, 362, 821 N.Y.S.2d 770, 855 N.E.2d 1 (2006) (quotation omitted); *see Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 936 F. Supp. 2d 321, 339 (S.D.N.Y. 2013) (stating that "New York courts apply the same analysis for Equal Protection challenges under the New York [C]onstitution as under the Federal Constitution" (citations omitted)). Additionally, the Court analyzes Plaintiff's NYCRL § 40-c claim using the same framework because the statute entitles individuals to "the equal protection of the laws of this state or any subdivision thereof." NYCRL § 40-c(1); *see Matter of Aurecchione v. N.Y. State Div. of Human Rights*, 98 N.Y.2d 21, 25-26, 744 N.Y.S.2d 349, 771 N.E.2d 231 (2002) (applying federal case law when the state discrimination statutes "address[es] the same type of discrimination ... afford[s] victims similar forms

of redress, [and is] textually similar" (citation omitted)).

**\*6** **[2]** **[3]** Defendants [14] argue that Plaintiff's equal protection claims musts be dismissed because Plaintiff pled guilty to three charges arising from her arrest. *See* Dkt. No. 94-21 at 12-13. Defendants also contend, in the alternative, that there is no evidence that Plaintiff's arrest was based on her transgender status. *See id.*

[14]   In the context of Plaintiff's equal protection and NYCRL claims, the Court uses the term "defendants" to refer to Defendants City of Watertown and Donoghue.

Plaintiff asserts that here guilty pleas are immaterial to her equal protection claims because those claims are based on differential treatment because of her transgender status and gender identity, not false arrest or malicious prosecution. *See* Dkt. No. 106-1 at 14-15. Plaintiff argues that she was subjected to differential treatment in the form of derogatory comments, misgendering, and physical assault, resulting in physical and psychological injuries. *See id.* at 17. Plaintiff also contends that Defendants' actions are subject to, and fail to satisfy, heightened scrutiny. *See id.* at 19-21. The Court agrees with Plaintiff.

**[4]** **[5]** The Equal Protection Clause requires the State to treat all persons similarly situated alike, avoiding classifications that are "arbitrary or irrational" and those that reflect " 'a bare ... desire to harm a politically unpopular group.' " *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446-47, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quotation and other citations omitted). To prove a violation of the Equal Protection Clause, a plaintiff must establish that (1) he or she was "treated differently than others similarly situated" because of intentional or purposeful discrimination and (2) "the disparity in treatment cannot survive the appropriate level of scrutiny." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted).

### *1. Heck v. Humphrey bar*

**[6]** Plaintiff's guilty please for disorderly conduct, harassment, and trespass do not bar her equal protection claims based on differential treatment during her arrest, booking, and detention. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) "precludes the use of § 1983 suits for damages that *necessarily* have the effect of challenging existing state or federal criminal convictions."

*Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (emphasis added). The purpose of this rule is twofold: first to avoid the use of § 1983 actions to substitute for writs of habeas corpus to challenge convictions; and second, to avoid the prospect of inconsistency between a conviction and a subsequent successful constitutional challenge to that conviction's underpinning in a civil action. *See Heck*, 512 U.S. at 483-87, 114 S.Ct. 2364.

**[7]** Here, even if Defendants are found liable for violating the Equal Protection Clause by treating Plaintiff differently on the basis of her transgender status during her arrest, booking, and detention, this finding would not *necessarily* demonstrate the invalidity of Plaintiff's guilty pleas because Plaintiff's conduct during the domestic dispute could still sufficiently support the charges for disorderly conduct, harassment, and trespass. In other words, because Plaintiff challenges Defendants' conduct during the course of her arrest and not the validity of the charges to which she pled guilty, *Heck* does not bar her equal protection claims. *Cf. Jackson v. Suffolk Cnty. Homicide Bureau*, 135 F.3d 254, 257 (2d Cir. 1998) (explaining that "a claim for use of excessive force lacks the requisite relationship to the conviction ... a finding that excessive force had in fact been used would not necessarily require the invalidation of the conviction").

### *2. Differential treatment*

**\*7** **[8]** **[9]** **[10]** To act with discriminatory purpose means to " 'select[ ] or reaffirm[ ] a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.' " *United States v. City of New York*, 717 F.3d 72, 93-94 (2d Cir. 2013) (citing *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). A plaintiff need not point to a specific comparator if "a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus" towards an identifiable group. *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (holding that Native American plaintiffs did not need to demonstrate "the disparate treatment of otherwise similarly situated non-Native American individuals" if the plaintiffs established that "defendants discriminatorily refused to provide police protection because the plaintiffs [were] Native American"); *see J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 130-31, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (reaffirming that "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause ... where, as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes"). Finally, verbal abuse

constitutes actionable differential treatment if accompanied by physical abuse or an appreciable psychological injury. *See Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015); *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order); *cf. Clark v. Hanley*, 89 F.4th 78, 114 (2d Cir. Dec. 27, 2023) (Chin, J., dissenting) (stating that "because the plight of transgender prisoners is an issue as to which social mores are changing quickly and dramatically[,] [c]ourts both in this Circuit and elsewhere have recently permitted transgender prisoners' [§] 1983 claims to survive motions to dismiss, sometimes even where prison officials' sexually harassing conduct was purely verbal").

[11]  Here, based on Plaintiff's following allegations, a reasonable jury could conclude that she was subjected to purposeful differential treatment because of animus towards her transgender status, resulting in physical abuse and an appreciable psychological injury: after learning that Plaintiff was a transgender woman, Officer Cummings called her a "guy," a "man dressed like a woman," and a "liar," *see* Plaintiff's SMF at ¶ 101; Officer Cummings told her, "we can't let you walk the streets looking and dressed like that ... you have serious mental problems – you are a guy dressed like a woman" and "you are going to go to jail and get strip searched ... we are going to show you that you are a man. You are going to love that," *see id.* at ¶¶ 103, 131; officers mocked the way Plaintiff was dressed and repeatedly called her a "man dressed like a woman," *see id.* at ¶ 112; officers required Plaintiff to remove her wig for her mugshot, even though cisgender [15] women with synthetic hair are not required to remove it, *see id.* at ¶¶ 114-16; Officer Cummings forcibly removed Plaintiff's wig, slamming her to the ground and ripping off some of her natural hair from her scalp, *see id.* at ¶ 128; and as a result of Defendants' conduct Plaintiff contemplated suicide and suffered from severe post-traumatic stress disorder, depression, anxiety, and psychological trauma, *see id.* at ¶ 183.

[15]     The term "cisgender" refers to a person whose gender identity corresponds to their sex assigned at birth and is, therefore, not transgender.

### 3. Appropriate level of scrutiny

[12]  For two independent reasons, Defendants' alleged differential treatment of Plaintiff based on her transgender status triggers heightened scrutiny. First, differential treatment based on sex triggers heightened scrutiny, *see United States v. Virginia*, 518 U.S. 515, 555, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (citation omitted); and, in

*Bostock v. Clayton County*, 590 U.S. 644, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020), the Supreme Court confirmed that discrimination based on transgender status constitutes sex discrimination, *see id.* at 660, 140 S.Ct. 1731 (stating that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex"); *see also Hecox v. Little*, 79 F.4th 1009, 1026-27 (9th Cir. 2023) (stating that "discrimination on the basis of transgender status is a form of sex-based discrimination. It is well-established that sex-based classifications are subject to heightened scrutiny" (citing *VMI*, 518 U.S. at 533-34, 116 S. Ct. 2264 and collecting cases)).

[13]     [14]  Second, quasi-suspect classifications trigger heightened scrutiny, *see Cleburne*, 473 U.S. at 440-41, 105 S.Ct. 3249, and – although the Supreme Court and the Second Circuit have not addressed the issue – the vast majority of courts to consider the question have concluded that transgender people constitute a quasi-suspect class. [16] *See, e.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020) (stating that "[e]ngaging with the suspect class test, it is apparent that transgender persons constitute a quasi-suspect class"); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 140 (S.D.N.Y. 2015) (holding that "transgender people are a quasi-suspect class" and applying heightened scrutiny); *Hecox*, 79 F.4th at 1026 (noting that the Court is "thus compelled to review the constitutionality of the Act under heightened scrutiny as it classifies based on transgender status"). The Court finds no basis for concluding otherwise, and Defendants' briefing, *see* Dkt. No. 94-21; Dkt. No. 112, fails to make any substantive arguments as to why heightened scrutiny does not apply. Accordingly, the Court analyzes Plaintiff's equal protection claims using heightened scrutiny.

[16]     Courts use the following four factors to determine whether a group constitutes a quasi-suspect class: (1) whether the class has historically been subject to discrimination, *see Bowen v. Gilliard*, 483 U.S. 587, 602, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987); (2) if the class has a defining characteristic that bears a relation to its ability to contribute to society, *see Cleburne*, 473 U.S. at 440-41, 105 S.Ct. 3249; (3) whether the class may be defined as a discrete group by obvious, immutable, or distinguishing characteristics, *see Bowen*, 483 U.S. at 602, 107 S.Ct. 3008; and (4) whether the class is a minority lacking political power, *see id. See Windsor v. United States*, 699 F.3d 169, 181-85 (2d Cir. 2012)

(applying the factors to homosexuals), *aff'd*, 570 U.S. 744, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013).

**\*8**  **[15]**  Heightened scrutiny is a "demanding" standard that requires the government to demonstrate an "exceedingly persuasive" justification for its differential treatment. *Virginia*, 518 U.S. at 533, 116 S.Ct. 2264. Specifically, the government must demonstrate " 'that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.' " *Id.* (quotation omitted). "The justification must be genuine," and it may not "rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Id.* (citations omitted); *see Sessions v. Morales-Santana*, 582 U.S. 47, 63 n.13, 137 S.Ct. 1678, 198 L.Ed.2d 150 (2017) (directing courts to "reject measures that classify unnecessarily and overbroadly by gender when more accurate and impartial lines can be drawn" (citations omitted)).

Here, Defendants' arguments, *see* Dkt. No. 94-21; Dkt. No. 112, do not entertain the possibility that Plaintiff was subjected to actionable differential treatment and proffer no discernable justifications for the alleged verbal abuse; requirement that Plaintiff remove her wig during her booking photo, despite cisgender women being permitted to keep synthetic hair on; or physical force used while removing Plaintiff's wig. Therefore, because a reasonable jury could conclude that Plaintiff was subjected to actionable differential treatment for which Defendants have not provided an exceedingly persuasive justification, heightened scrutiny has not been satisfied.

### 4. Personal involvement and municipal liability

Plaintiff contends that Defendants Chief Donoghue and City of Watertown are liable for the alleged equal protection violations because Defendant Chief Donoghue adopted the discriminatory policies that resulted in her differential treatment based on her transgender status. *See* Dkt. No. 106-1 at 18, 21-22. [17]

[17]  Defendants' briefing, *see* Dkt. No. 94-21; Dkt. No. 112, does not address whether Defendants Chief Donoghue and City of Watertown would be liable if Plaintiff establishes an equal protection violation.

**[16]**  **[17]**  **[18]**  **[19]**  **[20]**  A municipal official personally liable under 42 U.S.C. § 1983 if the "official's own individual actions" cause an injury to the plaintiff's constitutional rights. *Tangreti v. Bachmann*, 983 F.3d 609, 616-18 (2d Cir. 2020). Although a municipality is not liable for all constitutional violations committed by its employees under the theory of respondeat superior, a municipality is liable under § 1983 if its policy causes a constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As a result, "when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiff[']s ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Policymaking authority exists if "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). To establish causation, the plaintiff must point to a policymaker's "deliberate choice to follow a course of action" that is the " 'moving force [behind] the constitutional violation.' " *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quotation omitted); *see Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (explaining that a § 1983 action "employs the tort principle of proximate causation" (citation omitted)).

**[21]**  Here, Defendant Chief Donohue testified during his deposition that all sex-specific policies are interpreted as to treat transgender women as males, without regard to gender identity. *See* Plaintiff's SMF at ¶¶ 71-77. Defendant Chief Donohue's interpretation constitutes municipal policy because he has final authority to establish Defendant City of Watertown's policing policies, *see id.* at ¶ 59; Dkt. No. 107-15 at 47:13-48:25, and because official policy "often refers to formal rules or *understandings* – often but not always committed to writing – that are intended to, and do, establish fixed plans of action," *Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292 (emphasis added). Given that City of Watertown police officers received no guidance about the appropriate treatment of transgender individuals, *see* Plaintiff's SMF at ¶¶ 63-68, and Defendant Cummings admitted to not knowing what a transgender person was in 2017, *see id.* at ¶ 78, a reasonable jury could conclude that Defendant City of Watertown's sex-specific policing policies – created by Defendant Chief Donohue – led officers to categorically equate transgender women with men, disregarding gender identity, and causing the officers' verbal abuse, removal of Plaintiff's wig, and alleged physical assault while removing the wig. Therefore, as to Plaintiff's equal protection and NYCRL claims, the

Court concludes that Defendants City of Watertown and Chief Donohue are not entitled to summary judgment.

### 5. *Injunctive relief*

**\*9** Plaintiff seeks an injunction ordering Defendants to identify records related to her arrest and to "[c]orrect those records to properly identify [Plaintiff] as a woman, not a man," and to "[d]elete the booking photo depicting [Plaintiff] without her hairpiece from its records, destroy any hard copies of the photo, and cease providing public access to the photo." *See* Second Amended Complaint at 21.

Defendants argue that Plaintiff has no basis to seek the requested injunctive relief because the records match her information as it appeared on her driver's license in September 2017. *See* Dkt. No. 94-21 at 13-14. Plaintiff argues that she has standing to seek injunctive relief because Defendants' discriminatory treatment resulted in the creation of incorrect records that disregard her stated gender identity, constituting an ongoing harm. *See* Dkt. No. 106-1 at 24-25.

**[22]** **[23]** **[24]** **[25]** **[26]** To invoke federal jurisdiction a plaintiff bears the burden of establishing standing for each form of relief sought. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). Standing to seek injunctive relief requires the plaintiff to show that "it is 'likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision.' " *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, \*47 (2d Cir. 2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)). "A plaintiff makes this showing when the relief sought 'would serve to ... eliminate any effects of' the alleged legal violation that produced the injury in fact." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105-06, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). Specifically, when seeking an injunction to alter records, the plaintiff " 'need not show that a favorable decision will relieve [their] *every* injury,' " *id.* at 48 (emphasis in original) (quotation omitted); instead, "Article III only requires that some form of altering the records 'would at least partially redress' the alleged injury," *id.* (quotation omitted). "In general, the hurdle a plaintiff must clear to demonstrate that an injury is redressable through injunctive relief is low." *Id.* at 69 (Perez, J., concurring in part and dissenting in part).

For example, in *Soule*, the plaintiffs – non-transgender girls – alleged that they were subjected to sex discrimination because transgender girls were permitted to complete against them in track and field. *See Soule*, 90 F.4th at 40. The Second Circuit

held that the plaintiffs had standing to seek an injunction requiring the defendants to alter public athletic records by removing race times of transgender girls and reranking title and placements of non-transgender girls because "[t]he loss of publicly recognized titles and lower placements in specific races is itself an existing and ongoing effect of Plaintiffs' alleged injury – an effect that would be redressed by public record alterations reflecting those achievements." *Id.* at 49. The Second Circuit noted that, although the "significance of these athletic records may not be apparent to those who do not participate in the world of competitive sports ... [t]hat one may not deem them valuable is simply not the relevant inquiry for standing purposes." *Id.* The court reasoned that it must avoid "import[ing] a value judgment into the standing analysis where it does not belong" because "[j]ust as an award of nominal damages partially (even if nominally) remedies the violation of a legal right, injunctive relief can partially (even if nominally) remedy the existing harms that flow from the past denial of equal opportunity ...." *Id.* at 49-50 (citation omitted).

**\*10** **[27]** Here, Plaintiff's alleged injuries are redressable by the injunctive relief she seeks. Like the plaintiffs in *Soule*, Plaintiff alleges that discrimination led Defendants to create incorrect records upon which third parties will rely. Plaintiff specifically alleges that Defendants violated the Equal Protection Clause by disregarding her stated gender identity, ultimately creating records and a booking photograph that misrepresent her gender identity. *See* Dkt. No. 106-1 at 15-19, 24-25. Correcting Plaintiff's arrest records and deleting her booking photograph – in which Plaintiff was not permitted to wear her wig, an "important" part of her gender identity, *see* Plaintiff's SMF at ¶ 80 – would eliminate some ongoing effects of the alleged injuries because Defendant City of Watertown employees would no longer have access to records that incorrectly portray Plaintiff's gender identity and because the public would no longer have access to the booking photograph that incorrectly portrays Plaintiff's gender identity. As in *Soule*, the injunctive relief sought would redress the alleged discrimination by updating records that would have been correct but for the alleged discrimination. *See Soule*, 90 F.4th at 46 (stating that, "[i]n cases involving claims of discriminatory treatment, the alleged harm is frequently twofold: plaintiffs are discriminated against and that discriminatory treatment results in the denial of certain benefits that they would otherwise have enjoyed"). Accordingly, the Court finds that Plaintiff has standing to seek both forms of injunctive relief. However, even assuming Plaintiff's claims succeed on the

merits, the Court expresses no view as to whether the requested relief would be appropriate. *See id.* at 51 (stating that "[t]he fact 'that [a] plaintiff has standing to pursue her claim does not mean that she is entitled to the relief she seeks' " (quotation omitted)).

### IV. CONCLUSION

Accordingly, having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's request for oral argument, *see* Dkt. No. 106, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 94, is **GRANTED** insofar as Plaintiff's first cause of action, alleging an unreasonable strip search and visual body-cavity search in violation of the Fourth Amendment as against Defendants City of Watertown and Donohue, and **DENIED** in all other respects; and the Court further

**ORDERS** that Defendants Jefferson County, O'Neill, Spencer, and Dettmer's motion for summary judgment is **GRANTED** with regard to Plaintiff's first cause of action alleging an unreasonable strip search and visual body-cavity search in violation of the Fourth Amendment; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment, *see* Dkt. No. 106, is **DENIED**; and the Court further

**ORDERS** that the following claims remain for trial: (1) Fourth and Fourteenth Amendment sexual-assault claims against Defendant Dettmer; (2) Fourth Amendment unreasonable body-cavity search claim against Defendant Dettmer; (3) Fourteenth Amendment failure to intervene claim against Defendants Cummings, Larkins, and Davis; (4) Fourth Amendment excessive use of force claim against Defendants Cummings, White, and Dettmer; (5) Fourteenth Amendment denial of equal protection claim against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Larkins, Davis, and White; (6) New York State Constitution denial of equal protection claim against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Larkins, Davis, and White; and (7) NYCRL § 40-c claim against Defendants City of Watertown, Jefferson County, O'Neill, Spencer, Donoghue, Dettmer, Cummings, Larkins, Davis, and White; and the Court further

**ORDERS** that counsel for the parties shall file a joint letter on or before **February 27, 2024**, indicating which of the following weeks they are available to try this case: July 8, 2024, July 15, 2024, and/or July 29, 2024. Once the Court receives that information, it will issue a Final Pretrial Scheduling Order, setting forth dates for the submission of pretrial materials and for a Final Pretrial Conference.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2024 WL 1107903

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3965125
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES GOVERNMENT, Defendant.

Civ. No. 1:20-CV-207 (MAD/DJS)
|
Signed 03/17/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, Plaintiff Pro Se, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500 008, India.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Also pending are Motions for the Appointment of Counsel an to Obtain and ECF Login. Dkt. Nos. 3 & 5. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678-79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

**B. Allegations Contained in Plaintiff's Complaint**

**\*2** Plaintiff characterizes this action as one against the United States Government for personal injury, assault and battery, defamation, general damages, intentional infliction of mental distress and physical torture, and wage loss. Compl. at pp. 6-7. In summary, Plaintiff alleges a pattern of "unethical, unlawful, and inhumane Electronic Surveillance, Mind-Control, and Cyber-Stalking activities" by unnamed officials of the United States Government. *Id.* at p. 7. He

Case 5:24-cv-00438-GTS-TWD   Document 7   Filed 05/06/24   Page 73 of 76
**Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)**

2020 WL 3965125

makes slightly more specific allegations including alleged physical stalking and monitoring, as well as, phone and cyber stalking of Plaintiff, *id.* at p. 3, allegations that Defendant forced Plaintiff "to travel to United States through cyber stalking and mind control techniques," *id.* at p. 4, and forced Plaintiff to incur debt, make fraudulent money transfers, and make fraudulent benefits applications. *Id.* at p. 5.

### C. Review under Section 1915(e)

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Where, however, the grounds for dismissal offer no basis for curing the defects in the pleading, leave to amend would be futile. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are "substantive rather than formal and [ ] leave to amend would be futile." *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013).

Plaintiff's claims against the United States Government are subject to dismissal on the grounds of sovereign immunity. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). "Consent to suit 'must be unequivocally expressed in statutory text, and cannot simply be implied.' " *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. at 21 (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)).

Plaintiff makes no contention here that any waiver of this immunity applies to the allegations set forth in the Complaint. While the Federal Tort Claims Act ("FTCA") provides a limited immunity from suit for tort claims, it has strict exhaustion requirements. *Hill v. United States*, 2019 WL 5694016, at *5 (E.D.N.Y. Aug. 6, 2019). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). The Complaint neither mentions the FTCA nor alleges compliance with it. "Accordingly, even if a *pro se* plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over the FTCA claim if [the] plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action." *Moore v. Samuel S. Stratton Veterans Admin. Hosp.*, 2019 WL 251725, at *3 (N.D.N.Y. Jan. 17, 2019) (internal quotations omitted). As such, his claims against the United States should be dismissed with prejudice.

### D. Other Pending Motions

**\*3** In light of the recommended disposition of this case, Plaintiff's other pending Motions are denied.

"In deciding whether to appoint counsel, a court should first determine whether the indigent's position seems likely to be of substance." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Here, given the Defendant's immunity from suit, Plaintiff cannot make this threshold showing of merit and the Motion for Appointment of Counsel is denied.

"Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

### II. CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED** with prejudice; and it is

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel is **DENIED**; and it is further

2020 WL 3965125

**ORDERED**, that Plaintiff's Motion to Obtain an ECF Login and Password is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by certified mail, return receipt requested, upon Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[1]   If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3965125

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Mahmood v. United States, Not Reported in Fed. Supp. (2020)

2020 WL 1808206

2020 WL 1808206
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES of America, Defendant.

1:20-CV-207 (MAD/DJS)

|

Signed 04/09/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500 008, India, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, U.S. District Judge:

**\*1** Plaintiff commenced this action on February 25, 2020, against the United States of America asserting the following claims: (1) personal injury; (2) assault and battery; (3) defamation; (4) general damages; (5) intentional infliction of mental distress and physical torture; and (6) wage loss. *See* Dkt. No. 1. In a Report-Recommendation and Order dated March 17, 2020, Magistrate Judge Stewart reviewed the sufficiency of the complaint and recommended that the Court dismiss this action with prejudice. *See* Dkt. No. 7. Specifically, Magistrate Judge Stewart found that Plaintiff's claims, which are brought against the United States of America, are subject to dismissal on the grounds of sovereign immunity. *See id.* at 4-6. Neither party has objected to Magistrate Judge Stewart's Report-Recommendation and Order.

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404

U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff's complaint should be dismissed with prejudice. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).

**\*2** As Magistrate Judge Stewart correctly determined, Plaintiff makes no contention that any waiver of immunity applies to the allegations set forth in his complaint. Moreover, although the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity from suit for tort claims against the United States, it has strict exhaustion requirements and the burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory exhaustion requirements. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). Plaintiff's complaint neither mentions the FTCA nor alleges compliance with its exhaustion requirements. *See Pope v. Geo Grp.*, No. 18-CV-6900, 2019 WL 79426, \*3 (E.D.N.Y. Jan. 2, 2019)

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   1

2020 WL 1808206

("Accordingly, even if a *pro se* 'plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over' the FTCA claim if [the] 'plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action' ") (quoting *Diaz v. MDC Detention* Ctr., No. 17-CV-3768, 2018 WL 472810, *2 (E.D.N.Y. Jan. 17, 2018)). As such, the Court dismisses Plaintiff's complaint. [1]

[1]    Since Plaintiff's complaint can be liberally construed as attempting to bring a claim under the FTCA and because it is unclear from the complaint whether Plaintiff may still timely exhaust his administrative remedies, the dismissal will be without prejudice. *See Green v. Fed. Bureau of Prisons*, No. 11 Civ. 2554, 2012 WL 1694632, *3 (S.D.N.Y. May 15, 2012) (holding that if a court dismisses a complaint "for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuant administrative remedies has not expired")

(citing *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1808206

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.